ROYAL HIGHLANDERS V. DANIEL A. SCOVILL ET AL.

FILED NOVEMBER 6, 1902.  No. 12,082.

Commissioner's opinion, Department No. 1.

1. **Benevolent Societies: OFFICERS OF SUBORDINATE LODGES: CONTRACT:**
   **WAIVER.** Officers of subordinate lodges of benevolent societies
   have no authority, by reason merely of such office, to waive
   any of the provisions of the rules and regulations of the
   order which enter into and form a part of the contract
   of membership.

2. ——: ——: ——: ——: SUSPENSION FOR NON-PAYMENT OF
   DUES: REINSTATEMENT. When one of such rules was that after
   suspension for non-payment of dues a member could only be
   reinstated while in good health, the receipt of her dues for re-
   instatement by the subordinate lodge's secretary, while she
   was in a dying condition, was no waiver of such requirement
   of good health.

ERROR from the district court for Hamilton county.
Action by Daniel Albert Scovill and Elizabeth P. Scovill
against the Royal Highlanders, a fraternal beneficiary
association, upon a benefit certificate issued to Olive Marie
Scovill and made payable to her parents, the defendants
in error. The nisi-prius judge directed a verdict for the
plaintiffs below. The defendant brings error. Tried be-
low before SORNBORGER, J. *Reversed.*

*Hon. Eugene J. Hainer, J. H. Smith, Adolphus R. Tal-
bot* and *Thomas S. Allen,* for plaintiff in error:

This cause, by reason of the questions involved, is one
of vital importance, not only to the defendant fraternity,
but to every fraternal society operating in this state.

Only where, upon the admitted facts in the pleadings, a
party is entitled by law to judgment in his favor, is the

judge authorized to take the case from the jury. Code of Civil Procedure, sec. 440*; *Manning v. City of Orleans,* 42 Nebr., 712-714; *Kime v. Jesse,* 52 Nebr., 606; *Stewart v. American Exchange Nat. Bank,* 54 Nebr., 461.

Where conflict in the testimony exists, the defendant has an absolute right to have that conflict submitted to the jury. Even where there is no conflict in the testimony, but different minds may draw different conclusions from the admitted or proved facts, the case should be submitted to the jury and it is error for the trial judge to direct a verdict. *Suiter v. Park Nat. Bank,* 35 Nebr., 372; *Habig v. Layne,* 38 Nebr., 742; *Chicago, B. & Q. R. Co. v. Hildebrand,* 42 Nebr., 33; *Chicago, B. & Q. R. Co. v. Landauer,* 36 Nebr., 642; *Woolsey v. Chicago, B. & Q. R. Co.,* 39 Nebr., 798; *Omaha & R. V. R. Co. v. Chollette,* 33 Nebr., 143; *Van Etten v. Edwards,* 48 Nebr., 25; *Union Stock Yards Co. v. Conoyer,* 38 Nebr., 488; *McKinney v. Hopwood,* 46 Nebr., 871; *Hargrave v. Home Fire Ins. Co.,* 43 Nebr., 271; *Barr v. Birkner,* 44 Nebr., 197.

It is an elementary proposition governing pleadings that the specific act relied upon as constituting a waiver must be pleaded by the person who seeks to take advantage thereof, and no general allegation of a general custom will admit proof of a particular act relied upon, unless thus pleaded. *Anders v. Life Ins. Clearing Co.,* 62 Nebr., 585.

Where, as in this case, the suspension attaches by operation of law upon an event named, and a member dies before the suspension has been set aside, in conformity with the rules of the order, there can be no recovery upon the benefit certificate. *Carlson v. Supreme Council,* 115 Cal., 466, 47 Pac. Rep., 375; *Grand Lodge v. King,* 10 Ind. App., 639, 38 N. E. Rep., 352; *Rice v. Grand Lodge,* 92 Ia., 417, 60 N. W. Rep., 726; *Wells v. Independent Order,* 25 Canadian Law Journal, n. s., 209; *Grand Lodge v. Jesse,* 50 Ill. App., 101.

In *Sovereign Camp Woodmen of the World v. Rothschild,* 40 S. W. Rep., 553, the court of civil appeals of

* See Cobbey, Annotated Code, note.

Texas says, with respect to a similar provision in a fraternal law or edict (p. 557) :

The laws do not invest the clerk of a camp with authority to reinstate a suspended member. His reinstatement depends upon, and arises from, payment by the suspended member to the clerk of all arrearages within the period of three months. The assured must be held to have known that the clerk had no authority to reinstate him to the benefits of the order, and that this reinstatement was dependent upon his own compliance with the conditions made essential by the laws of the order. Having this knowledge, he could not have been misled by the act of the clerk, and there is no ground upon which the claim of estoppel can rest. Had the clerk of the camp expressly agreed to reinstate the suspended member, without a compliance with the conditions required by the laws of the order, having no authority to reinstate suspended members, and the assured being held to have knowledge of this fact, it is not believed that such conduct would estop a mutual benefit order, such as the appellant. Bacon, Benefit Societies, 426.

It can not be doubted that there was a complete suspension within the meaning of the laws governing the association. A compliance with said conditions (payments of arrearages, new medical certificate and re-election) was necessary, for such is the plain provision of the law. *McDonald v. Supreme Council,* 78 Cal., 49; *Equitable Life Assurance Society v. McElroy,* 83 Fed. Rep., 631, 28 C. C. A., 365; *Haydel v. Mutual Reserve, etc., Ass'n,* 98 Fed. Rep., 200-204; *Hartford Ins. Co. v. Small,* 66 Fed. Rep., 490; *Insurance Co. v. Statham,* 93 U. S., 24-30; *Klein v. Ins. Co.,* 104 U. S., 88-91; *Thompson v. Insurance Co.,* 104 U. S., 252-258; *McMahon v. Maccabees,* 151 Mo., 522-537.

Officers of a mutual benefit insurance company have no authority to waive by-laws and provisions adopted by the members for their mutual protection. *Mulrey v. Shawmut Ins. Co.,* 81 Am. Dec. [Mass.], 689; *Baxter v. Chelsea Ins. Co.,* 79 Am. Dec. [Mass.], 730; *Lyon v. Supreme As-*

*sembly,* 26 N. E. Rep. [Mass.], 236; *Westchester Ins. Co. v. Earle,* 33 Mich., 143; *Sparks v. Dispatch Trans. Co.,* 24 Am. St. Rep. [Mo.], 35; *Ceeder v. Loud,* 24 Am. St. Rep. [Mich.], 134; *Sherman v. Swigart,* 19 Am. St. Rep. [Kan.], 137; Bacon, Benefit Societies, secs. 151, 426; *Pledger v. Sovereign Camp,* 42 S. W. Rep. [Tex.], 653; *Brewer v. Chelsea Fire Ins. Co.,* 14 Gray [Mass.], 203; *Burbank v. Boston,* 11 N. E. Rep. [Mass.], 691; *McCoy v. Roman Catholic Mutual Ins. Co.,* 152 Mass., 272; *Busby v. N. A. Life Ins. Co.,* 17 Am. Rep., 634; *Union Mutual Life Ins. Co. v. McMillen,* 24 Ohio St., 67; *Home Fire v. Garbacz,* 48 Nebr., 827; *Borgraefe v. Knights of Honor,* 26 Mo. App., 218; *Boulon v. American Mutual Life Ins. Co.,* 25 Conn., 542; *Illinois Masons' Benevolent Society v. Baldwin,* 86 Ill., 479; Joyce, Insurance, sec. 1382, p. 1455; *Wiggin v. Knights of Pythias,* 31 Fed. Rep., 122; *Manson v. Grand Lodge,* 30 Minn., 509.

*J. H. Grosvenor, John A. Whitmore* and *D. A. Scovill, contra:*

This question is so firmly settled by all courts and emphasized by a recent decision of this court (*Modern Woodmen v. Coleman,* 64 Nebr., 162, in which Commissioner Ames, speaking for the court, says, at page 642: "Notwithstanding the cunningly devised by-laws and stipulations of beneficiary associations like the plaintiff in error, the clerks of the local camps are, in the matter of collecting and remitting assessments and the waiver of forfeitures, the agents of the societies, and not of the local camps or of its members"), that it seems almost useless to cumber a brief or weary a court with argument or citation of authorities.

And yet we deem it best to cite a few of the leading cases on this point, without comment thereon: *Supreme Lodge v. Withers,* 20 Sup. Ct. Rep., 611, 177 U. S., 260; *Modern Woodmen v. Tenis,* 111 Fed. Rep., 113; *Supreme Tribe Ben Hur v. Hall,* 56 N. E. Rep. [Ind.], 780; *Cover-*

*dale v. Royal Arcanum*, 61 N. E. Rep. [Ill.], 915; *Supreme Lodge Knights of Honor v. Davis*, 26 Colo., 252.

DAY, C.

Daniel A. and Elizabeth P. Scovill brought this action in the district court for Hamilton county against the Royal Highlanders to recover upon a benefit certificate issued by the defendant to Olive M. Scovill, in which the plaintiffs were named as beneficiaries. The trial court instructed the jury to return a verdict in favor of the plaintiffs, upon which judgment was rendered, to review which, the defendant has brought error to this court.

The defendant is a mutual fraternal association organized under the laws of this state, with its principal place of business or head office in the city of Aurora, Nebraska. Like most of the mutual fraternal insurance associations, the defendant organization is founded upon the lodge system; having a supreme or executive castle, with subordinate lodges, located at different places throughout the country. In addition to the fraternal, benevolent and social features which the association inculcates, it also undertakes, under certain conditions, to provide indemnity in case of disability or death of its members. One of the subordinate or tributary castles is located at Aurora, which is known as Helen Castle, No. 68, of the Royal Highlanders. Olive M. Scovill, previous to her marriage to George H. Decker, became a member of this tributary castle, and on January 26, 1899, there was issued to her by the defendant a benefit certificate whereby the defendant agreed in case of her death to pay a certain sum to the beneficiaries named in the certificate. The certificate provided that in case of death occurring after one or before two years from the date of the certificate, the sum of $500 should be paid to the beneficiaries. The certificate also contained a condition as follows: "The payment of all or any part of this certificate is conditioned under the provisions that the owner thereof shall have in every particular complied with the edicts, rules and regulations

governing the membership of this fraternity now in force, or that may hereafter become a part of the same. * * * Both the edicts and the application are made a part of this certificate." The rules and edicts of the supreme castle, among other things, provided for the payment by its members of certain assessments or fixed quarterly dues, which sums were to be paid by the member to the secretary of the tributary castle of which he was a member within a given period, and provided that "any member failing to pay the same within the time in which it is due shall stand suspended from all the benefits of the fraternity." The insured did not pay the assessment levied against her for the month of May, and which under the rules of the association became due and payable on or before June 1, and for such failure she was duly suspended, and on June 13 notice of her suspension was given, which notice was received by her upon the following day. After becoming a member of Helen Castle, No. 68, the insured removed to Omaha and was residing there at the time of her death. On June 18 or 19, she was taken ill with premature child-birth, necessitating a severe operation on the 19th. On the 20th, the attending physician detected septic symptoms, which continued to grow worse and at 6:30 o'clock p. m., on June 21, the insured died. At 3 o'clock on the afternoon of her death the attending physician called up by telephone D. A. Scovill, one of the beneficiaries, and informed him of the serious illness of his daughter, and suggested that if she had any insurance he ought to look after the payment of her premium. On the afternoon of June 21, Mr. Scovill called at the head office of the Royal Highlanders and inquired the amount necessary to be paid to reinstate the insured, and was informed that all matters of payment of assessments and dues should be made through the secretary of the tributary castle, and directed him to call upon Mrs. Glover, the secretary of Helen Castle, No. 68. Mrs. Glover resided some distance from the business portion of the city, and as a matter of convenience for the members of the castle, she left her books and

receipts at her husband's store, where assessments could be paid. Although not specially authorized to do so by the action of the lodge, Mr. Glover, in the absence of his wife, received payments made by any of the members, and issued receipts to them therefor in the name of his wife, as secretary of the castle. Mr. Scovill called at the store, and not finding Mrs. Glover, asked Mr. Glover the amount necessary to be paid to reinstate his daughter. Mr. Glover examined the books and informed Mr. Scovill that the assessments and quarterly dues amounted to $1.30, which Mr. Scovill then paid; and thereupon Mr. Glover, in the name of his wife, as secretary of the castle, issued a receipt to Olive M. Scovill, showing payment of assessments for May and June, and the quarterly dues payable June 3, and delivered a receipt to Mr. Scovill. There is a conflict in the testimony as to whether Mr. Scovill made the payment before or after he received the telephone message from the physician. At all events he did not indicate to Mr. Glover any knowledge or information he may have had respecting the condition of his daughter's health, and no inquiry was made by Mr. Glover as to the health of the insured.

In the view we have taken of the case, the question as to Mr. Scovill's knowledge of the condition of his daughter's health seems entirely immaterial. In making the payment he acted as the agent of the insured, and his knowledge of her condition does not seem to us to have any special bearing upon her right to be reinstated. Her right to become reinstated depends upon the edicts and regulations of the supreme castle. One of the edicts provides that "any member suspended for non-payment of monthly payments or dues may be reinstated, if in good health and not engaged in any of the prohibited occupations, by the payment of all arrearages of every kind within 60 days of suspension." It would seem, therefore, that the right of the insured to become reinstated depended upon two conditions: First, she must have been in good health at the time; and second, the payment of all arrearages within the time limited. By the plain and clear meaning of the

edict, the good health of the member at the time of the payment must exist, as a condition precedent to the right of reinstatement. When the insured tendered the amount of the assessments due, she impliedly, at least, represented that the conditions existed upon which she had the right to be reinstated, viz., that she was in good health. The evidence is clear and undisputed that at the time of the payment of the assessments the insured was hopelessly ill and dying, and lived but a few hours thereafter.

It is insisted, however, by the plaintiffs, that the acceptance of the assessments by Mr. Glover was a waiver of the condition of good health. We can not agree with this contention. The members of a mutual benefit association are conclusively presumed to know its rules and regulations, and the assured, therefore, must have known that her good health was a condition precedent to her right to reinstatement. She was not acting, therefore, in good faith to the lodge, in tendering the payment of her dues, in view of the condition of her health. This fact alone, in our opinion, would be sufficient to defeat her right of recovery. We do not doubt the general rule that the provisions in a policy of insurance which are made for the benefit of the company can be waived by the company, but such conditions can be waived only by officers of the company having authority to do so. Granting that Mr. Glover had the rights of the secretary of the lodge, it nowhere appears that he had authority to waive any of the provisions of a contract entered into between a member and the supreme lodge. In the case of *Field v. National Council*,* the rule is announced which we think the correct one to apply to mutual fraternal insurance companies, where the whole scheme is founded upon mutuality and good faith of its members. In that case *Borgraefe v. Supreme Lodge*, 22 Mo. App., 127, is cited with approval, in which it is said: "The subordinate lodges are no doubt the agents of the supreme lodge in dealings with the members for many purposes, and in those cases where the subordinate lodges act

* 64 Nebr., 226.

through their ministerial officers, and where the latter act in conformity with the rules governing the lodges and the order, these officers may become *pro hac vice* the agents of the subordinate lodges.    But it is not shown to us that these officers are anywhere endowed with the power to set aside the rules of the order, or that the subordinate lodges are endowed with such a faculty.    On the other hand, it is perceived by the provisions of the laws of the order above quoted, that no grand lodge has power even to alter or amend the laws governing the subordinate lodges.    The doctrine of waiver, which is often appealed to to prevent forfeitures in the case of policies of insurance, has no application to the forfeitures of memberships in these orders.    The laws and rules governing the different branches of such an order, are in the nature of contracts among all the members, and, considering the wide-spread extent of these organizations, and the very great extent to which these schemes of benevolence have taken the place of life insurance, especially among the working classes, it is highly important as a principle of public policy that, in cases of this kind, their rules and regulations should be substantially upheld by the judicial courts." *State v. Temperance Benevolent Ass'n,* 42 Mo. App., 485; *Karcher v. Supreme Lodge,* 137 Mass., 368; *Hall v. Supreme Lodge,* 24 Fed. Rep., 450; *Rood v. Railway Passenger & Freight Conductors' Ass'n,* 31 Fed. Rep., 62.

We think, under the facts proved, the court should have directed a verdict for the defendant.    We therefore recommend that the judgment of the district court be reversed, and the cause remanded for further proceedings according to law.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED AND REMANDED.