## MODERN WOODMEN OF AMERICA v. LYNCH et al.

(Court of Civil Appeals of Texas. El Paso. Dec. 7, 1911.)

1. INSURANCE (§ 726*)—MUTUAL BENEFIT INSURANCE—CONTRACT.

An application to a fraternal benefit society recited that applicant agreed not to thereafter, while a member of the society, engage in any of the named prohibited occupations, except at the same time recognizing the full force and effect of the society's by-laws limiting or extinguishing the certificate of any member engaged in such occupations, and that applicant would conform to all by-laws then in force or thereafter adopted, and further agreed that the answers and agreement as set out in the application should form the basis of the contract between him and the society, and to conform to all laws, usages, and customs thereof then in force or thereafter adopted, and that the application and laws of the society should form the sole basis of admission to membership and of the certificate to be issued. *Held*, that the application, together with the certificate and by-laws

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

with their amendments, constituted the contract of insurance between insured and the society.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1870–1872; Dec. Dig. § 726.*]

2. INSURANCE (§ 748*) — MUTUAL BENEFIT INSURANCE—FORFEITURE—SALE OF INTOXICANTS.

Where the application to a fraternal benefit society stated that the applicant was not engaged in the sale of malt liquors, and would not thereafter engage in that business, and the certificate and by-laws provided that the certificate should be void if insured thereafter engaged in the sale of malt liquors, the benefit certificate was rendered void by insured thereafter engaging in the sale of malt or intoxicating liquors.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1893, 1894; Dec. Dig. § 748.*]

3. INSURANCE (§ 819*) — MUTUAL BENEFIT INSURANCE—ACTION—SUFFICIENCY OF EVIDENCE.

Evidence in an action on a fraternal benefit certificate *held* to show that insured was engaged in performing duties incident to the sale of intoxicating liquors when he died.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 2006, 2007; Dec. Dig. § 819.*]

4. INSURANCE (§ 748*) — MUTUAL BENEFIT INSURANCE—FORFEITURE OF CERTIFICATE — SALE OF INTOXICANTS.

If insured was engaged in performing duties incident to the sale of intoxicants when he died, prohibited by the certificate and by-laws of the society, the fact that he received no compensation would not prevent the forfeiture of the certificate pursuant to its provisions.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1893, 1894; Dec. Dig. § 748.*]

5. APPEAL AND ERROR (§ 1175*) — DISPOSITION — RENDITION OF JUDGMENT FOR DEFENDANT.

Where the uncontradicted evidence in an action on a mutual benefit certificate showed that insured had engaged in a prohibited occupation, so as to avoid the policy, the appellate court will reverse a judgment for plaintiff, and render judgment for defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from District Court, Harris County; W. P. Hamblen, Judge.

Action by W. B. Lynch and others against the Modern Woodmen of America. From a judgment for plaintiffs, defendant appeals. Reversed and rendered.

Benj. D. Smith and W. H. Ward, for appellant. Heidingsfelders, for appellees.

McKENZIE, J. The Modern Woodmen of America, a fraternal beneficiary society, organized and doing business under the laws of the state of Illinois, issued to Larry Robert Lynch, one of its members, a benefit certificate, insuring his life for $2,000 in favor of his mother, Rachel O'Neill Lynch. Larry Robert Lynch was killed August 28, 1909, and this suit is brought by his father and mother to collect the insurance.

The defendant pleaded that the plaintiffs' cause of action was founded upon contract between it and the insured, which contract consisted of the by-laws of the order, the application of the insured for membership and insurance, and of the benefit certificate, which contract it alleged had been breached and rendered absolutely null and void because the insured had engaged in the sale of malt, spirituous, fermented, vinous, and intoxicating liquors to be used as a beverage, by reason of which breach of said contract it had been discharged from all liability. The pleadings of the defendant set out minutely such parts of the benefit certificate, application, and by-laws as are applicable to its defense. From the testimony we find that the insured made an application for membership and insurance in said society, in which it is stated as follows: "I am engaged in an honorable and lawful business or vocation, and I am not now, nor occasionally, nor continuously, during any part of the year, directly or indirectly, engaged or employed * * * in any of the following occupations classed as hazardous or prohibited by the by-laws of said society, viz.: * * * Manufacture or sale of malt, spirituous, fermented, vinous, or any intoxicating liquors to be used as a beverage, in the capacity of proprietor, stockholder, agent, or servant. I agree that I will not hereafter, while a member of this society, engage in any of these occupations, except at the same time recognizing the full force and effect of the society's laws limiting or extinguishing its certificate of any member engaging in such occupations." The application further contained the agreement, with warranty, that the applicant would comply with and conform to any and all of the laws of the said Modern Woodmen of America, whether now in force or hereafter adopted, and that the answers and agreement as set out in the application shall form the basis of the contract between him and the Modern Woodmen of America. The insured further agreed in said application to make payment of all fines, dues, and assessments legally levied within the limit of time provided by the society's laws, and to conform in all respects to the laws, rules, and usages of the society then in force or which might thereafter be adopted and enacted by same, and that the application and the laws of the society should form the sole basis of his admission to and membership therein and of the benefit certificate to be issued to him by said society. Upon said application the society issued to the insured its beneficiary certificate in the sum of $2,000, and a copy of said application was attached to and made a part of said beneficiary certificate. It was provided in the benefit certificate that, if the insured should be or become engaged in the manufacture or sale of malt, spirituous, fermented, vinous, or any intoxicating liquors to be used as a beverage, in

the capacity of proprietor, stockholder, agent, or servant, then the certificate should be null and void and of no effect, and all moneys which had been paid and all rights and benefits which had accrued on account of the certificate should be absolutely forfeited.

The by-laws of the society provided that its members shall be white male persons over 18 years of age, of exemplary habits and good moral character, who shall conform to the obligations in the ritual prescribed and obey the laws of the society now in force or as hereafter modified or enacted, who shall be believers in a Supreme Being, and who shall not, in the capacity of proprietor, stockholder, agent, or servant, be engaged in the manufacture or sale of malt, spirituous, fermented, vinous, or any intoxicating liquors to be used as a beverage. It is also provided in the by-laws, under the heading of "Qualifications of Applicants for Beneficial Membership," that the applicant shall be of sound bodily health and mind, of exemplary habits, and of good moral character, not engaged in a dishonorable or unlawful occupation, nor in the manufacture or sale of malt, spirituous, fermented, vinous, or any intoxicating liquors to be used as a beverage, either in the capacity of proprietor, stockholder, agent, or servant. And section 10 of the by-laws, under the heading "Disqualifications for Membership either Social or Beneficial," provides that no person shall be or become a member of this society, either social or beneficial, who is or shall be engaged in the manufacture or sale of malt, spirituous, fermented, vinous, or any intoxicating liquors to be used as a beverage, either in the capacity of proprietor, stockholder, agent, or servant; and section 11 of the by-laws provides as follows: "Cancellation of Certificate of Member now Engaged in the Liquor Business. The certificate of any member of this society, either social or beneficial, who is now engaged in the manufacture or sale of malt, spirituous, fermented, vinous or any intoxicating liquor, to be used as a beverage, in the capacity of proprietor, stockholder, agent or servant, * * * is hereby declared to be, and is hereby made, absolutely null and void, and no payment by him made of any dues or assessments to the camp clerk, head clerk or any other officer of any local camp or the head camp of this society shall have the effect of waiving such forfeiture or reinstating such certificate holder to any rights, benefits, or privileges as a member of this society, either social or beneficial, and all payments by him made shall be absolutely forfeited." Other provisions of the by-laws are similar in effect. Under the by-laws which were in effect at the time of the application and at the date of the issuance of the benefit certificate, section 13 defined "Occupation in Liquor Business" as follows: "A person shall be deemed and held to be engaged in the manufacture or sale of malt, spirituous, fermented, vinous, or any intoxicating liquors when the work or duties incident to his employment require him occasionally or continuously, during the whole or a part of the time of his employment, to manufacture or sell such liquor to be used as a beverage. * * *" After the issuance of the certificate, the last-named section was amended, which amendment took effect from the 1st day of September, 1908, and was in force at the time of the death of the insured, and reads as follows: "Sec. 13: Occupation and Liquor Business Defined: A person shall be deemed and held to be engaged in the manufacture or sale of malt, spirituous, fermented, vinous or any intoxicating liquors to be used as a beverage, whenever he, with or without compensation, performs any of the work or duties incident to said prohibited occupation. * * *"

The mother of Larry Robert Lynch, who is the beneficiary in the certificate, testified, in substance, that on the day her son was killed he was working at Joe Sirocka's saloon; that she did not know whom he was working for, or whether he waited on customers at the bar, and, using her own language: "The way Larry came to go to work there at Sirocka's was they sent for him to come over there to their place of business and help them. I suppose he did go over there. * * * It was on the Thursday evening before Larry was killed that he went over to that saloon of Sirocka's." Joe Sirocka testified that he was engaged in the saloon business at Crosby, Tex., that Larry Lynch was not employed by him at the time of his death. Using Sirocka's own language, we quote the following: "He was in my saloon once in a while, helping me out; that is, at such times when I was very busy. He would then do most anything that was to be done there, and at certain times he would wait on customers at the bar. He had been around our saloon for three days before his death, but during those three days he did not help me all the time, only once in a while. At the time Larry Lynch was killed I sold only beer in that saloon. Beer is a malt liquor." Don Rombs testified, in substance, that on August 28, 1909, the day that Larry Lynch was killed at Crosby, Tex., he (witness) was living at Crosby, and saw Larry Lynch during the day, both on the streets and at Joe Sirocka's saloon, at which place he was tending bar. He saw Larry Lynch serve drinks over the bar there in the saloon where he served drinks more than once, and each time that he was in the saloon Larry Lynch was tending bar, was serving beer and whisky, had served him drinks over the bar the day he was killed, had seen him serve drinks over the bar both in the forenoon and afternoon of the day he was killed. J. T. Hare, who lived at Crosby, knew Larry Lynch, who was killed on August 28, 1909,

141 S.W.—67

and saw him late in the evening of the day he was killed, in Joe Sirocka's saloon, waiting on the bar, serving drinks, intoxicating liquors, was serving both whisky and beer, and was selling those drinks over the counter all that day. Geo. Maxey testified that he and three other men were served with drinks by Larry Lynch in the saloon at Crosby. R. L. McClanahan testified that during the month of August, 1908, Larry Lynch paid him, as clerk of the Woodmen of the World, over and above the ordinary dues for the month of August, 1908, the sum of 50 cents, because he was working in Sirocka's saloon, and that Larry Lynch had stated to him at the time that he made the payment that he was just helping Joe Sirocka out, that he (Larry Lynch) was still engaged with the railroad company, and that he was not working in Sirocka's saloon for a salary, but was just helping out, as Sirocka's partner was sick. Eugene Bostick testified to having carried a message from Joe Sirocka to Larry Lynch Wednesday or Thursday before his death, and further testified that he saw the said Larry Lynch in Joe Sirocka's saloon a few days prior to his death, waiting on customers, and that he had waited upon him, sold him a glass of beer, and that he had paid Larry Lynch for the beer.

The case was tried before a jury, who returned a verdict into court for the sum of $2,000, with 6 per cent. interest thereon from the 28th day of August, 1909, and judgment was entered accordingly.

The defendant requested the court to charge the jury as follows: "Gentlemen of the jury, you are charged that you will return a verdict for the defendant"—which requested charge was refused by the court, and which is assigned as error by the appellant in this appeal, and appellant contends that this cause on appeal should be reversed and here rendered for it.

[1] From the foregoing we hold that the application, the benefit certificate and the by-laws, with amendments, constituted the contract of insurance as between the Modern Woodmen of America and the insured. Supreme Lodge Knights and Ladies of Honor v. Payne, 101 Tex. 449, 108 S. W. 1160, 15 L. R. A. (N. S.) 1277, s. c. 110 S. W. 523; United Moderns v. Colligan, 34 Tex. Civ. App. 173, 77 S. W. 1032; Supreme Ruling of Fraternal Mystic Circle v. Ericson, 131 S. W. 96.

[2] We further hold from the terms of the contract of insurance that if the insured, prior to his death and subsequent to the date when the benefit certificate was issued to the insured, was engaged in the manufacture or sale of malt, spirituous, fermented, vinous, or any intoxicating liquors to be used as a beverage, in the capacity of proprietor, stockholder, agent, or servant, as pleaded by the defendant, the policy or benefit certif-

icate would be rendered null and void, and that plaintiffs in this suit should not recover. In determining whether the insured was engaged in the manufacture or sale of malt, spirituous, fermented, vinous, or any intoxicating liquors to be used as a beverage, we are governed solely by the provisions of the by-laws as set out in the amended section 13, as aforesaid.

[3] We have examined carefully the entire record, and find the evidence is of the most positive kind, and is uncontradicted that the insured was engaged in performing the work and duties in the sale of malt, spirituous, and intoxicating liquors to be used as a beverage. This work was in violation of the terms of the policy, and was a proper defense to a recovery thereon. The insured's act in performing the work and duties of selling the malt, spirituous, and intoxicating liquors, as shown by the evidence, rendered the benefit certificate null and void.

[4] It is true that he was not working at the saloon for compensation or pay, as is shown by the testimony, but, nevertheless, he was performing the duties incident to said prohibited occupation as much so as if he was receiving compensation or pay for such services. Because the policy or benefit certificate was rendered null and void by the acts of the insured in engaging in the sale of malt, spirituous, and intoxicating liquors, it becomes necessary for us to hold that the trial court should have peremptorily instructed the jury to return a verdict for the defendant, as requested in the special charge which was refused by the court.

[5] And since the evidence is uncontradicted and conclusively shows that the insured was engaged in the prohibited occupation of selling liquor, which rendered the benefit certificate null and void, it follows that this cause should be reversed and here rendered.

The other assignments of error, in view of the opinion of the court in reversing and rendering the cause, will not be considered.

Reversed and rendered.