(79 South. 259)

SUPREME RULER OF MYSTIC CIRCLE v. DARWIN. (8 Div. 18.)

(Supreme Court of Alabama. May 9, 1918.)

1. INSURANCE ⬡⟹688 — FRATERNAL INSURANCE—STATUTES APPLICABLE.

Code 1907, §§ 4572, 4573, 4579, as to misrepresentation in application or proof of loss, incontestability of life policy after payment of two annual premiums, and expressing contract in policy, do not apply to fraternal benefit societies.

2. INSURANCE ⬡⟹762—FRATERNAL INSURANCE—REINSTATEMENT OF CERTIFICATE.

If insurer had been properly suspended by defendant fraternal society, statements made in his application for reinstatement would be binding, otherwise not.

3. INSURANCE ⬡⟹817(2) — FRATERNAL INSURANCE—REINSTATEMENT OF CERTIFICATE.

Insured's statements in application for reinstatement, though not conclusive, were prima facie evidence of suspension for nonpayment of dues, and made it incumbent upon plaintiff to show that insured had not been properly suspended notwithstanding application and attempted reinstatement.

---

4. INSURANCE ☞825(2) — FRATERNAL INSUR-
ANCE—REINSTATEMENT OF CERTIFICATE.
　Whether receipts for dues and assessments
negatived a suspension, or the right to suspend
under terms of policy of fraternal society, *held* a
question of fact.

5. INSURANCE ☞755(3) — WAIVER OF CONDI-
TIONS OF POLICY.
　Fraternal society could waive provision of
policy that receipts for overdue assessments
were not valid, unless member had been rein-
stated.

6. INSURANCE ☞745 — WAIVER OF CONDI-
TIONS OF POLICY—STATUTES.
　While Acts 1911, p. 700, §§ 8, 20, would ap-
ply to renewal of policy in fraternal society, it
would have no application to question whether
there was a forfeiture or waiver of forfeiture of
original certificate existing before act became ef-
fective.

　Appeal from Circuit Court, Madison
County; R. C. Brickell, Judge.
　Action by Mattie Lee Darwin against the
Supreme Ruler of the Mystic Circle. Judg-
ment for plaintiff, and defendant appeals.
Reversed and remanded.
　Taylor & Watts, of Huntsville, for appel-
lant. Addison White and Lanier & Pride,
all of Huntsville, for appellee.

　ANDERSON, C. J. [1] The trial court
seems to have tried this case upon the idea
that the policy contract was governed by
sections 4572, 4573, and 4579 of the Code of
1907. The appellant, however, being a secret
fraternal benefit society or association, did
not belong to the class dealt with in said
sections of the Code. Eminent Household
of Columbian Woodmen v. Blackerby, 78
South. 821;[1] Locomotive Engineers Ins. Co. v.
Hughes, 77 South. 352,[2] wherein the cases of
National Ins. Co. v. Sherry, 180 Ala. 627, 61
South. 944, and Brotherhood v. Miller, 193
Ala. 68, 69 South. 10, were overruled upon
this point. The policy is therefore controlled
by the legal principles announced in the case
of Ala. Gold Ins. Co. v. Johnson, 80 Ala. 467,
2 South. 125, 59 Am. Rep. 816, and the case
should have been tried accordingly. Though
it must be said, in justice to the trial court,
that the cases overruling the Sherry and Mil-
ler Cases, supra, had either not been decided
or published when the case at bar was tried.
　We think that the record unquestionably
shows that the defendant is a secret, benefit
order not governed by the sections of the
Code above noted. The defendant's answer
to the interrogatories not only discloses this
fact, but the application or declaration for a
charter recites:
　"The object of the said corporation is to unite
fraternally white persons of proper age and good
social and moral character in a fraternal bene-
ficial and relief society, with ritualistic or secret
work for beneficial and protective purposes."

　[2] As this case must be reversed and tried
under the law as laid down in the Ala. Gold
Ins. Case, supra, instead of the sections of the
Code above noted, it is not out of place to
suggest that under the evidence as now pre-
sented it is quite material whether or not
the insured was bound solely by the represen-
tations and warranties made at the time of
the issuance of the policy or the change there-
of in 1902, or by those made upon the rein-
statement of same in 1915. There is no proof
whatever of misrepresentations or a breach
of warranty in procuring the original policy
or a change thereof in 1902, though there was
proof of same as to the application for a re-
instatement in 1915, and if the insured had
been properly and legally suspended under
the terms of the policy the application and
statements of 1915 were a condition precedent
to reinstatement and would be binding upon
him. On the other hand, had there been no
lapse of the original policy, that is, if he had
not in fact been suspended as for nonpayment
of dues, as set out in the application for re-
instatement in 1915, and which was approved
June 9, 1915, and the statements made were
induced through a mutual mistake or through
a mistake of the insured improperly induced
by the defendant, he was not bound thereby.
　[3, 4] The statements made in the applica-
tion for reinstatement, though not conclusive,
were prima facie evidence that the insured
had been suspended for nonpayment of dues,
and made it incumbent upon the plaintiff
to show that he had not been properly sus-
pended, notwithstanding the application and
attempted reinstatement. The plaintiff at-
tempted to do this by showing divers and sun-
dry receipts for dues and assessments, and
whether or not this evidence negatived a sus-
pension or the right to suspend, under the
terms of the policy and constitution and by-
laws of the order, is a question of fact which
should probably be left to the jury, unless,
of course, the evidence upon the next trial
should be such, as to a valid suspension vel
non, as to make it a question for the court.
　[5, 6] It is true there is a clause in the
certificate that "receipts given for overdue
assessments are not valid unless the member
has first been reinstated in accordance with
the laws of the order." But it was a ques-
tion of fact as to whether or not the receipts
given were for "overdue" or presently due
assessments. Moreover, this clause could be
waived by the order by an agent authorized
to receive payments and give receipts. It
was inserted for the benefit of the order, and
it could at its own volition take advantage
or waive it and delegate to agents the im-
plied power vested in the president in con-
junction with the secretary or actuary. Unit-
ed States Life Co. v. Lesser, 126 Ala. 568, 28
South. 646; Security Mutual Co. v. Riley, 157
Ala. 553, 47 South. 735; United States Co. v.
Goin, 73 South. 117.[3] Acts 1911, p. 700, §§ 8
and 20, have no application to the lapse or
forfeiture in question or the waiver of same.
If there was a forfeiture or waiver it was
under the terms of the certificate as it ex-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
　　　[1] Ante, p. 443.　　　[2] Ante, p. 58.　　　[3] 197 Ala. 584.

listed before the act of 1911, and was a contract to which said act did not and could not apply. True, the renewal was subsequent to the act, and if there had been a legal forfeiture and no waiver of same the act of 1911 would no doubt apply to the renewed contract, but as to whether or not there was a forfeiture or waiver of same involved the contract as made before the passage of the act of 1911, and which was governed by the law as it existed when the certificate was issued and not the act of 1911. Sherry's Case, supra, National Order v. Lile, 200 Ala. 508, 76 South. 450, Beiser v. Sov. Camp, W. O. W., 199 Ala. 41, 74 South. 235, and Woodmen v. McHenry, 197 Ala. 541, 73 South. 97, involved certificates issued subsequent to the act of 1911.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

McCLELLAN, SAYRE, and GARDNER, JJ., concur.