(89 South. 58)

## SOVEREIGN CAMP, W. O. W., v. ALLEN.
### (6 Div. 129.)

(Supreme Court of Alabama. April 14, 1921. Rehearing Denied May 12, 1921.)

**I. Insurance ⊚⇒719(I)—Subsequently enacted by-laws binding on all members of fraternal order.**

Fraternal beneficial societies being conducted on principles of mutuality, and the power to make by-laws for the government of the corporate body being an attribute of every corporation, such by-laws when duly enacted are binding on all the members of the corporation.

**2. Insurance ⊚⇒688—Fraternal benefit certificates not covered by statutory provisions with respect to nonforfeiture for nonintentional misrepresentations, incontestability, etc.**

Benefit certificates of fraternal organizations are not covered by Code 1907, §§ 4572, 4573, 4579, as to misrepresentations, incontestability after payment of two annual premiums, and expressing contract in policy.

**3. Insurance ⊚⇒748—Failure to notify clerk of fraternal benefit society of change to more hazardous occupation forfeits certificate.**

The failure of one insured under a fraternal benefit certificate, on changing to a more hazardous occupation, to give notice and pay an additional assessment as required by the by-laws, works a forfeiture.

**4. Insurance ⊚⇒756(I)—Fraternal benefit society need not notify insured of suspension and forfeiture after failure to notify of change to more hazardous occupation.**

Under a by-law of a fraternal benefit society requiring an insured to notify it of a change to a more hazardous occupation and pay an additional assessment, and providing that, failing to do so, he shall stand suspended and his certificate be null and void, it is not necessary that insured should first be given notice of suspension and forfeiture.

**5. Insurance ⊚⇒755(2)—Acceptance of regular assessment by local clerk of fraternal benefit society not waiver of provision of by-laws as to notice of change to more hazardous occupation, though he knew of such change.**

Under the constitution and by-laws of a fraternal benefit society, providing that no officer, employee, or agent had the power to waive any of the conditions on which beneficiary certificates were issued, or any of the provisions of the constitution and by-laws, and Acts 1911, p. 713, § 20, providing that such provisions shall be binding on all the members and beneficiaries, the acceptance by the clerk of a local camp of a regular assessment, which he receipted for and forwarded to the Sovereign Camp, though he knew of insured's change of occupation to one more hazardous without giving notice thereof or tendering an additional assessment, as required by the by-laws, was not a waiver of the right to forfeit the certificate on such ground, the sovereign officers having no knowledge or notice of such change of occupation nor proof of any custom as to waiver of such provisions by the local clerk.

**6. Insurance ⊚⇒755(I)—To support "waiver" something must be done or said to induce action or reliance on it, though insufficient to create technical estoppel.**

A "waiver" may be created by acts, conduct, or declarations insufficient to create a technical estoppel, so that, if an insurance company, after knowledge of a breach, enters into negotiations with the assured which recognize and treat the policy as still in force, or induce the insured to incur trouble or expense, it will be regarded as having waived the right

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to claim a forfeiture; but there must be something done or said by the company to induce action or reliance on it, a "waiver" being in the nature of an estoppel, though they are not convertible terms.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Waiver.]

**7. Insurance** &#9758;**755(3)—Evidence held insufficient to show waiver of forfeiture by local clerk of fraternal benefit society.**

Where one insured under a fraternal benefit certificate failed to notify the clerk of the order of a change of occupation to one more hazardous, and to pay additional assessments as required by the by-laws the fact that the clerk of his local camp accepted and forwarded to the Sovereign Camp the amount of his regular assessment did not operate as a waiver of forfeiture, where the clerk advised him, on discovering his change of occupation, that he should pay the additional assessment, the insured not having relied on the clerk's conduct.

### On Application for Rehearing.

**8. Evidence** &#9758;**5(1)—Courts take judicial notice of facts generally known.**

Courts take judicial notice of that which is generally known.

**9. Evidence** &#9758;**20(2)—Court will take judicial notice of ordinary duties of "flagman on a freight train," as compared to "conductor, and other similar railroad employees."**

The court will take judicial notice of the public's understanding of the ordinary duties of a "flagman on a freight train," as compared to the "conductor and other similar railroad employees" designated in the by-laws of a fraternal benefit society as more hazardous occupations, notice of insured's change to one of which was required.

**10. Insurance** &#9758;**748—"Flagman on a freight train" held more hazardous occupation within by-laws listing "conductors and other similar railroad employees" as such.**

The position of "flagman on a freight train" comes within the meaning of the language, "conductors and other similar railway employees," in the by-laws of a fraternal benefit society, requiring notice of insured's change of occupation to one of such more hazardous employments.

**11. Evidence** &#9758;**52—Judicial notice takes place of proof.**

Judicial notice of a fact takes the place of proof, and is of equal force.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Action by Virgie Allen against the Sovereign Camp of the Woodmen of the World upon a beneficiary life certificate payable to her and issued to Eugene Allen. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

C. H. Roquemore, of Montgomery, for appellant.

Brief was misplaced and did not reach the Reporter.

Goodwyn & Ross, of Bessemer, for appellee.

There was a waiver of any forfeiture. 201 Ala. 687, 79 South. 259; 128 Ala. 242, 29 South. 646; 157 Ala. 553, 47 South. 735. Regardless of the rulings on the pleadings, all matters sought to be set up that were meritorious were submitted to the jury, and hence no injury occurred. 194 Ala. 687, 70 South. 115; 178 Ala. 492; 177 Ala. 474, 59 South. 169; 79 Ala. 338. The extent of the agent's authority and the numerous provisions of the by-laws and constitution were clearly jury questions. 201 Ala. 687, 79 South. 259; 199 Ala. 164, 74 South. 63; 185 Ala. 301, 64 South. 362; 128 Ala. 242, 29 South. 646. If there had been a forfeiture for failure to pay additional premiums, the Sovereign Camp should have taken affirmative action to so declare, and, failing to do so, waived the same. 199 Ala. 164, 74 South. 63; 123 Ala. 667, 26 South. 655; 7 Ala. App. 255, 60 South. 1006.

GARDNER, J. Appellant is a fraternal beneficiary society, and issues to its members benefit certificates of insurance. The husband of appellee became a member of Chester Camp, No. 327, at Arcadia, La., taking out a benefit certificate payable to her, upon which she brings this suit.

There were numerous special pleas, replications, and rejoinders, and many assignments of error are predicated on the rulings of the court upon the demurrer thereto. But upon our view of the case it is brought within a very narrow compass, and the questions of pleading need no separate consideration.

It is without dispute that at the time the benefit certificate was issued the insured was a farmer, and obtained the rate applicable to that occupation. He moved his membership to Tuscaloosa in 1915, and to Bessemer in 1917. In the meantime he had changed his occupation to that of a flagman on a railroad, designated in the by-laws of the association as a hazardous occupation, and one which called for an additional monthly assessment. As to exactly where he was residing at the time of his change of occupation it is not made clearly to appear, but the time he became engaged as a flagman is fixed by the plaintiff as seven years and seven months prior to his death on September 5, 1919. All dues paid by insured after the change of occupation have been refunded by defendant in check forwarded to plaintiff for such amount. He notified none of the clerks for the local camps that he had changed his occupation to that of a flagman, and paid no additional assessment.

On the certificate there was a statement signed by the insured to the effect that he had read the same, and the conditions thereon, and agreed to and accepted the same. Among other provisions contained in the

certificate was one to the effect that it was issued and accepted subject to all of the laws, rules, and regulations of the fraternity now in force, or that may thereafter be enacted— "and shall be null and void if said Sovereign does not comply with all of said conditions and with all the laws, rules, and regulations of the Sovereign Camp of the Woodmen of the World, that are now in force or which may hereafter be enacted, and with the by-laws of the camp he is a member."

Concerning a change to a hazardous occupation, the by-laws contain the following provision:

"If a member engages in any of the occupations or business mentioned in this section he shall within thirty days notify the clerk of his camp of such change of occupation, and while so engaged in such occupation shall pay on each monthly installment of assessment thirty cents for each one thousand dollars of his beneficiary certificate in addition to the regular rate. Any such member failing to notify the clerk and to make such payments as above provided shall stand suspended and his beneficiary certificate shall be null and void."

It therefore appears that upon this change of occupation from a farmer to that of flagman on a railroad it became the duty of the insured within 30 days to notify the clerk of his camp of such change, and to pay the additional assessment of 30 cents for each $1,000 in addition to the regular assessment. The by-laws expressly provide that upon his failure so to do "he shall stand suspended, and his beneficiary certificate shall be null and void."

[1] While there is much similarity between life insurance policies issued by what is termed the old line companies and benefit certificates of fraternal organizations, as here involved, yet many important differences exist. Slaughter v. Grand Lodge, 192 Ala. 301, 68 South. 367; Niblack on Benefit. Soc., § 97; Supreme Com., etc., v. Ainsworth, 71 Ala. 436, 46 Am. Rep. 332. Societies of this character are conducted on principles of mutuality, for, as is said in the Ainsworth Case, supra:

"The fundamental principle of such organizations is the mutuality of duty and equality of rights of the membership, without regard to time of admission. This cannot well be preserved if the members stipulating for benefits were not required to consent that they would be subject to future as well as existing by-laws."

Again the following quotation from the Ainsworth Case:

"The power to make by-laws for the government of the corporate body, fixing and regulating its own duties and that of its members, not inconsistent with its charter, or the purposes and objects of its creation, not repugnant to the common law, or to the laws of the state, constitutional and statutory, is an attribute of every corporation. The power is regarded as of so much importance that it is seldom left to implication, but is in express terms conferred by the law from which corporate existence is derived. 2 Kent, 296; Ang. & Ames on Corporations, § 110; 2 Wait's Actions & Defences, 366. When duly enacted by the body to whom the corporate legislative power is delegated, by-laws are binding upon all the members of the corporation, who are presumed to know them, and to contract in reference to them."

[2] The certificate expressly states that it was accepted by the insured subject to all the laws of the fraternity then in force or that may thereafter be enacted. It is to be noted that certificates of this character are not covered by sections 4572, 4573, and 4579 of the Code of 1907, as pointed out in Supreme Ruler of the Mystic Circle v. Darwin, 201 Ala. 687, 79 South. 259.

[3, 4] The provision requiring the insured, upon change of his occupation to one which was more hazardous, to give notice to the clerk and pay the additional assessment was one of great importance, and concerned the very substance of the contract. The insured is presumed to know the law of the order of which he is a member; and that his failure to comply with this important provision worked a forfeiture cannot be seriously questioned. There is some suggestion in brief of counsel for appellee that insured should have first been given notice of suspension and forfeiture; but the language of the by-laws is directly to the contrary, and places upon him the duty to notify the clerk of the local camp of the change of occupation, and pay the additional assessment therefor.

[5] The principal insistence on the part of appellee is that the forfeiture was waived, reliance being placed upon the evidence to the effect that insured paid the regular assessment to the clerk of the local camp at Bessemer, which was receipted for and forwarded to the Sovereign Camp by the clerk, and that Baty, the clerk, knew of insured's occupation as a flagman at the time. It is not pretended that the sovereign officers of the order had any knowledge or notice thereof, nor proof of any custom as to waiver of those provisions by the local clerk; but the contention rests solely upon this knowledge by the clerk at the time he receipted for the assessment. The constitution and by-laws of the order expressly provide that—

"No officer, employee, or agent of the Sovereign Camp, or of any camp, has the power, right, or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary, or waive any of the provisions of this constitution or these laws."

The laws of the order prohibiting such waiver, and insured being charged with knowledge thereof, there are numerous authorities holding to the view that under such circumstances the fraternal order would not

be bound by such waiver. See Simmons v. Sov. Camp, W. O. W., 136 Tenn. 233, 188 S. W. 941; Odd Fellows' Benefit Ass'n v. Smith, 101 Miss. 322, 58 South. 100; Niblack, Benefit Soc. § 97; Hartman v. Nat. Councilmen, etc., 76 Or. 153, 147 Pac. 931, L. R. A. 1915E, 152; Royal Highlanders v. Scovill, 66 Neb. 213, 92 N. W. 206, 4 L. R. A. (N. S.) 421; Sov. Camp, W. O. W., v. Rothschild, 15 Tex. Civ. App. 463, 40 S. W. 553; Day v. Supreme Forest, etc., 174 Mo. App. 260, 156 S. W. 721; Mod. Woodmen of Am. v. Tevis, 117 Fed. 369, 54 C. C. A. 293; Boyce v. Royal Circle, 99 Mo. App. 349, 73 S. W. 300; Mod. Woodmen of Am. v. Lynch (Tex. Civ. App.) 141 S. W. 1055; Supreme Lodge, etc., v. Jones, 35 Ind. App. 121, 69 N. E. 718; McMahon v. Maccabees, 151 Mo. 522, 52 S. W. 384; Edmiston v. Homesteaders, 93 Kan. 485, 144 Pac. 826, Ann. Cas. 1916D, 588; Bost v. Supreme Council, 87 Minn. 417, 92 N. W. 337.

In this state there has been legislative sanction to such provisions. Section 20, Acts 1911, p. 700; W. O. W. v. McHenry, 197 Ala. 541, 73 South. 97; Beiser v. Sov. Camp, 199 Ala. 41, 74 South. 235.

It is unnecessary that we commit ourselves to all that is said in the foregoing authorities from other jurisdictions, for the reason that in our opinion the question is not here presented, and the decision, of course, is properly confined to the record before us.

[6] As previously stated, appellee relied upon a waiver on the part of Baty, the clerk of the local camp at Bessemer; but we think the testimony of this witness demonstrates that his conduct would not constitute a waiver, even conceding, for the purposes of this case only (without deciding), that any waiver by him would have been binding. It has been held that a waiver is in the nature of an estoppel, though they are not convertible terms, for, as said by this court in Queens, etc., Ins. Co. v. Young, 86 Ala. 424, 5 South. 116, 11 Am. St. Rep. 51, quoted in Supreme Tribe v. Hall, 24 Ind. App. 316, 56 N. E. 780, 79 Am. St. Rep. 262:

"A waiver may be created by acts, conduct, or declarations, insufficient to create a technical estoppel. If the company, after knowledge of the breach, entered into negotiations or transactions with the assured, which recognize and treat the policy as still in force, or induces the assured to incur trouble or expense, it will be regarded as having waived the right to claim the forfeiture."

But, unquestionably, to support a waiver there must be something done or said by the company to induce action or reliance upon it. Insurance Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387.

[7] The evidence of Baty discloses that he learned for the first time that the insured was engaged in a hazardous occupation when he made the payment to him personally, which was either two months or a few days before his death, and that he advised the insured that he should pay the additional assessment, which he declined to do. To use the language of the witness:

"I told him he had better pay it. * * * He said he would go ahead and pay the same rate he had been paying. * * * I never notified any of the sovereign officers at headquarters that Allen was engaged as a railroad flagman."

Not only was there no reliance upon the conduct of the clerk by the insured, but he acted in defiance of his advice. It cannot be said therefore, under these circumstances, that the mere fact that the local clerk forwarded to the Sovereign Camp in his monthly report the amount of regular assessment paid by the insured could operate as a waiver of forfeiture. So far as the record discloses, the amount of the assessment was the proper amount, as the insured had acquired the certificate under the rate given the occupation of a farmer, and there was nothing to indicate upon the records a change of occupation. This was a matter known to him, which he should have disclosed to the authorities. This he failed to do, and by so doing forfeited his rights thereunder, and no waiver thereof is shown.

We have reached the conclusion, therefore, that, under the undisputed evidence in the case, the plaintiff was not entitled to recover, and the court erred in refusing the affirmative charge at the defendant's request.

Counsel for appellee rely upon the case of Supreme Ruler of the Mystic Circle v. Darwin, supra, as supporting the doctrine of waiver here insisted upon. The report of that case does not disclose that there was any provision in the laws of the order as to the limited authority of the local clerk, as is here involved; and, in addition thereto, the evidence in that case as to waiver was wholly unlike that here considered. The holding in that authority does not militate against the conclusion here reached.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.

Response to Application for Rehearing.

GARDNER, J. Counsel for appellee vigorously assail the foregoing opinion, which they characterize as "unsound," and the result of which is "dangerous in its miscarriage of justice." The brief then continues:

"In the first place, there is absolutely no evidence from the first word of this record to the last that the insured in the policy came within the terms and conditions of the constitution and by-laws designating certain persons as those of a more hazardous risk, requiring the payment of an additional premium."

A change of occupation from that of a farmer to the more hazardous one of flag-

man on a freight train, without giving notice and paying the additional premium, as required by the constitution and by-laws of the order, was the very foundation of the defense in this cause. If there had been no change to such hazardous occupation within the meaning of the laws of the order, then there would have been no breach by the insured, and all that is written in the original opinion in this cause would be entirely useless, and without foundation. Therefore the assertion of counsel, as noted above, calls for a brief response upon this question.

That portion of the constitution and by-laws here in question defining such hazardous occupations reads as follows:

"Sec. 43a. Structural iron workers, circus riders, and trapeze performers, conductors and brakemen on railway freight trains, locomotive engineers, and firemen, switchmen, hostlers, and other similar railway or steamship employees, excepting agents, office men, and those engaged in employment not more hazardous."

The fact that the position of flagman was not specifically named in the foregoing by-law did not escape the attention of the writer upon the original consideration of this record, but it appears very clear from a study of the record that the position of a flagman was assumed by all the parties, as well as by the trial court, to have been embraced within the meaning of the language of the by-laws, and that this did not constitute a controverted issue in the cause. We have reread the original brief filed by counsel for appellee upon submission of the cause in this court and we fail to find any indication therein whatever that it was insisted the insured had not made a change of occupation to a more hazardous one, contrary to the by-laws.

The statement in the original opinion is entirely correct to the effect that "the principal insistence on the part of appellee was that the forfeiture was waived."

The evidence was without dispute, as testified by the plaintiff in the cause, that her husband had been engaged as a flagman on the railroad—

"for seven years and seven months before his death. * * * He was a passenger flagman first; * * * he was a passenger flagman for about two years, and the balance of the time, of about five years and two months, he was a flagman on the rear end of a freight train."

While it is true that the foregoing excerpt from the by-laws merely names conductors and brakemen on railway freight trains, locomotive engineers, firemen, switchmen, and hostlers, yet there is added the further significant language, "and other similar railway or steamship employees." With no discussion of this question upon the original submission, the court took it for granted that the parties to the cause had assumed that it would be held that the position of freight train flagman would clearly be included as "a similar railway" position, so far as the question of hazardous occupations was concerned, as conductors, brakemen, firemen and switchmen. We consider it too clear for discussion that the language of the exception as to agents and office men has no material bearing upon this question, and may be laid out of view. True, there was no proof offered that the position of such flagman was such a similar hazardous occupation as that of conductor, and the other positions named in the by-laws, but we think none was necessary.

[8-11] Courts take judicial notice of that which is generally known, "for justice does not require that courts profess to be more ignorant than the rest of mankind." 15 R. C. L. p. 1057. The public has, in the main, a correct understanding of the ordinary duties of a flagman on a freight train, as compared to the conductor and other such railway employees designated in the by-laws of the order, and the courts will therefore take judicial notice thereof. 15 R. C. L. p. 1124. We have no hesitancy in holding, therefore, that the position of flagman on a freight train comes within the meaning of the language of the by-laws, "and other similar railway * * * employees," and that, consequently, proof that he held such position was itself sufficient, without more. "Judicial notice of such fact takes the place of proof, and is of equal force." R. C. L. supra (1056).

The other questions argued in brief upon this application were fully treated in the original opinion, and as to them we rest content as to what was there said.

The application for rehearing will be denied.