## National Union *v.* Sherry.

*Assumpsit.*

(Decided April 17, 1913.   61 South. 944.)

1. *Appeal and Error; Filing Transcript; Time.*—Although the return day of the appeal was in June under section 2870, Code 1907, and no return was made or transcript filed until the December following, the appeal will not for that reason be dismissed where there was no call of any division after that date during that term of the court at which the case could have been submitted; the transcript being actually filed in time for the case to be submitted at the earliest possible time after the appeal was taken.

2. *Insurance; Mutual Benefit; Application of General Laws.*—The provisions of section 4572 and 4573, Code 1907, apply to a benefit certificate although relating to life insurance companies generally.

3. *Same; Misrepresentations.*—Misrepresentations as to physical conditions by an applicant for life insurance do not operate to avoid the contract of insurance thereupon made, unless they are such as to deceive the insurer about matters material to the risk, thus amounting to fraud or unless they be warranted as true, and consequently involve a breach on the part of the insured of the contract of insurance.

4. *Same; Waiver; Acceptance of Premium.*—Where premiums were paid by the insured and accepted by the society with notice of the falsity of representation made to secure the certificate, the defense of misrepresentation is waived.

5. *Constitutional Law; Retroactive Statutes.*—Where a benefit certificate was issued while sections 4572-3, Code 1907, were applicable to such certificate, the provisions of Acts 1911, p. 700, relating to fraternal benefit insurance, cannot be given the effect to take the certificate out of the influence of the provision of such section as otherwise it would impair the obligation of the contract.

APPEAL from Barbour Circuit Court.

Heard before Hon. M. SOLLIE.

Action by Janie Sherry against the National Union upon a benefit certificate issued on the life of J. Sherry. Judgment for plaintiff and defendant appeals. Affirmed.

G. L. COMER, for appellant.   The various pleas to which demurrers were sustained sufficiently presented

the defenses of breach of warranty and misrepresentation, and the court erred in sustaining said demurrer. —*Hunt v. Preferred Accident Co.,* 172 Ala. 444. Even if the sections of the Code relating to general insurance were applicable to Fraternal societies, this did not prevent appellant from setting up the defenses in the several pleas.—Authorities supra. In any event, these sections were expressly appealed as to fraternal benefit societies by General Acts 1911, p. 700; 151 Ill. 294; 8 Blatchford, 581; *Ala. Med. College v. Muldon,* 46 Ala. 603; *Luke v. Calhoun County,* 56 Ala. 415; *Turnipseed v. Jones,* 101 Ala. 593. The court erred in allowing the benefit certificate to go in as evidence.— *National L. & A. I. Co. v. Lokey,* 166 Ala. 174; *U. S. H. & A. Co. v. Veitch,* 161 Ala. 630. The whole paper including the application, should have gone in as evidence, if any part of it was admissible.—*Kelly v. L. I. C. Co.,* 113 Ala. 453; *Providence S. L. A. S. v. Pruitt,* 141 Ala. 688; *Manhattan L. I. Co. v. Hereford,* 172 Ala. 434; *Hunt v. Preferred, supra.*

A. H. MERRILL & SONS, for appellee. The appeal should be dismissed because the transcript was not filed in time.—Sec. 2870, Code 1907; 81 Ala. 100; 81 Ala. 98; 139 Ala. 318; 161 Ala. 317; *Swain v. State,* Court of Appeals in MSS. Replications 4 and 5 were perfect answers to all the pleas filed in this case.—*Mobile L. I. Co. v. Pruitt,* 74 Ala. 487; 40 Am. Rep. 295; 26 Ia. 1; 23 Am. St. Rep. 62. The breach of the warranty and the misrepresentations were known to the agents of the insurance company, its medical examiner, at the time they were made, and before the policy was issued, and this rendered them waived or acquiesced in.—*Syndicate I. Co. v. Catchings,* 104 Ala. 176, and authorities there cited; *Flinn v. Equitable L. I. Co.,* 34 Am. Rep.

561; 120 U. S. 183. The Acts of 1911, p. 700, cannot be given the effect of taking the present policy out of the influence of sections 4572, et seq., Code 1907, for if given that effect, said act would be unconstitutional as retroactive.—*Watson v. Rose,* 51 Ala. 292; *Howard v. Jones,* 50 Ala. 66. These sections apply to the contract in question.—*Manhattan L.. I. Co. v. Vernuille,* 156 Ala. 592; *M. L. I. Co. v. Allen, supra.* By accepting the premiums after knowledge of the falsity of the statement, the company waived the misrepresentations.

MAYFIELD, J.—This submission is on motion to dismiss the appeal and on the merits. The appeal was taken June 3, 1912, and was therefore returnable to the first Monday of the term of this court next after the expiration of 20 days from the date of the appeal. —Code, § 2870. While the day fixed by statute for the return of the appeal was in June, 1912, and it was not returned and no transcript was filed until December 10, 1912, it does not follow that the appeal should be dismissed on account of this apparent delay in filing the transcript or in docketing the cause on certificate of appeal. When the reason for the rule ceases, the rule itself ceases.

It could have been of no possible benefit or detriment to either party to have filed the transcript in June, 1912, on the day fixed by the statute. There was no call of any division after that date, during that term of the court, at which the case could have been submitted; and the transcript was actually filed in ample time for a submission at the earliest call at which it could have been submitted, and the case was in fact submitted at the earliest possible time after the appeal was taken. Statutes and rules of court on this subject are intended to facilitate and expedite the business of the courts, and

not to cut off nor fetter the right of appeal. As the result could not have been different had the transcript been filed on the day named in the statute, and the statute not providing that the appeal shall be dismissed unless filed on that date, we are unwilling to dismiss this appeal on this showing.

It was decided in the case of *Winthrow v. Woodward,* 81 Ala. 100, 2 South. 92, that: "The failure to file the transcript during the term to which the appeal is taken, no order in the cause being asked or made during the term, though not a discontinuance of the appeal (Code, § 3953), is legal cause of discontinuance; and the appeal will be dismissed on account of such failure, on motion made at the next term, with due diligence after the transcript has been filed."

In the case of *Porter v. Martin,* 139 Ala. 318, 35 South. 1006, it was said: "The return day of the appeal was the first Monday after the lapse of 20 days from March 12, 1902. At all events the record should have been filed in this court on Monday of the week of the call of the Fourth division in this court, which was June 2, 1902. In point of fact, the record was not filed in this court until July 5, 1902, after the term to which the appeal was taken. No excuse for this delay is shown. It cannot be affirmed that the appellees were not prejudiced by it. The motion to dismiss the appeal for this unwarranted delay in filing the record in this court was seasonably made at the term of the court following the filing of the record here. The motion must prevail."

In the case of *Collier v. Coggins,* 103 Ala. 281, 15 South. 578, the facts were very similar to the facts in this case. The appeal was taken on the 2d of May, 1893, and was returnable on the 29th of that month, and the transcript was not filed until the 5th of December, 1893,

and the court said: "The summer call of the Eighth division expired before the return day of the appeal. The next call was late in January, 1894. The record was filed December 5, 1893. The appellee was not prejudiced by the delay in not filing the transcript at an earlier date. The rule on this question is as follows: 'Upon satisfactory excuse being shown for the delay, the court may, in its discretion, permit the transcript to be filed and the cause docketed, for the first time, after the adjournment of the term to or during which the appeal is returnable upon such terms as the court may impose.' Adopted February 10, 1894; 97 Ala. p. ix. The motion to dismiss the appeal must be overruled." This we conceive to be the correct rule and proper practice and results in our denying the motion to dismiss the appeal. This brings us to a consideration of the merits of the appeal.

The action is on a life insurance policy, or, more accurately speaking, a benefit certificate, issued by the appellant, a mutual aid or fraternal society, incorporated, on the life of one of its members, John Sherry. The real bone of contention is whether or not the assured made false and fraudulent representations, in procuring the insurance, sufficient to avoid the policy or to deprive the beneficiary of the fruits of the certificate of benefit in question. This defense was attempted to be set up by a great number of special pleas, to which demurrers were sustained; these rulings on the demurrers forming the basis of numerous assignments of error.

The following expression, taken from the brief of the appellant, is a fair statement of the questions and assignments and of the nature of the questions presented and insisted upon in argument: "The first 44 errors assigned relate to the rulings of the court below on

the pleadings. The pleas are somewhat different in phraseology, and a careful (examination?) of each plea is desired in order to test the rulings of the court below on each of said pleas. This court below sustained the demurrer of the plaintiff to most of the pleas filed by the defendant; and, while a separate assignment of error is made as to the ruling of the court below on each of said pleas, yet it is not necessary, under the facts of this case, to argue each of said errors separately, but the argument will be made as a whole, but applies to each of the errors which are separately assigned. The principal contention between the parties as to the rulings of the court on the demurrers is as to whether or not sections 4572, 4573, and 4579 are and were applicable to the benefit certificate now sued on." We are of the opinion that sections 4572, 4573, and 4579 of the Code apply to the insurance contract sued upon unless the contract was taken from under their influence by the passage of the act of April 24, 1911 (Acts 1911, p. 700). We are of the opinion that the contract sued upon was not taken from under the influence of the first two sections, whatever may be the result as to the last, by the passage of the subsequent act of 1911. The first of said two sections of the Code, if applicable to the contract in question (and we hold that they were), entered into and formed a part of the contract as if written therein as a part thereof; and, in so far as they became a part of the contract, those parts could no more be destroyed or changed, or the obligation thereof impaired, by subsequent statutes, than any other part of the contract. The Constitutions, state and federal, expressly prohibited any such legislation. The latter mentioned section may be said to pertain more to the remedy than to the right; and as to the remedy the rule as to retrospective legislation is

different. But as to the influence of this particular section in this particular case it is unnecessary for us to decide, for the reason that all the questions involved on this appeal can be disposed of, without deciding what was the effect of the statute of April 24, 1911, upon section 4579 of the Code, so far as this contract is concerned.

It was said by this court in the case of *Leahart v. Deedmeyer*, 158 Ala. 295, 48 South. 371: "It may be stated, as a general proposition, that there is no section in our Constitution which prohibits the enactment of a retroactive law.—*Aldridge v. Tuscumbia, etc., R. R.*, 2 Stew. & P. 199, 23 Am. Dec. 307; *Lindsay v. United States Savings, etc., Ass'n*, 120 Ala. 168, 24 South. 171, 42 L. R. A. 783. Section 22 of our Constitution of 1901 expresses the only limitation in that line, and our courts have held that 'ex post facto' laws are necessarily penal laws, so that, unless a law impairs the obligation of a contract, or deprives the citizen of some vested right, or is obnoxious to some other provision of the Constitution, the mere fact that it is retroactive does not render it unconstitutional. The general rule is that a law will not be construed as having a retroactive effect unless it is plain from its terms that the Legislature so intended.—*Smith v. Kolb, et al.*, 58 Ala. 645."

The Supreme Court of Massachusetts said in the case of *Simmons v. Hanover*, 23 Pick. 193: "Upon the general question whether any retrospective laws affecting vested rights are valid, there have been conflicted opinions. In the case of *Calder v. Bull*, 3 Dall. 386 [1 Ed. 648], which is a leading case, Judge Iredell expresses a decided opinion that the legislative power cannot be restrained except by some express provision in the Constitution; and that retrospective laws not thus restrained are clearly valid. Judge Chase was of a different

opinion, but he admits that retrospective laws may, in some cases, be proper and necessary. In the case of *Goshen v. Stonington,* 4 Conn. 210 [10 Am. Dec. 121], Hosmer, C. J., remarking upon these and other conflicting opinions, says: 'With those judges who assert the omnipotence of the Legislature in all cases where the Constitution has not interposed an explicit restraint, I cannot agree. Should there exist, what I know is an incredible supposition, a case of the direct infraction of vested rights, too palpable to be questioned, and too unjust to admit of vindication, I could not avoid considering it a violation of the social compact and within the control of the judiciary;' 'on the other hand, I cannot harmonize with those who deny the power of the Legislature to make laws, in any case, which, with entire justice, operate on antecedent legal rights. A retrospective law may be just and reasonable; and the right of the Legislature to enact one of this description I am not speculatist enough to question.' "

The object and effect of these constitutional provisions were well expressed by the Supreme Court of the United States in the case of *McCracken v. Hayward,* 2 How. 612, 11 L. Ed. 397, as follows: "In placing the obligation of contracts under the protection of the Constitution, its framers looked to the essentials of the contract more than to the forms and modes of proceeding by which it was to be carried into execution; annulling all state legislation which impaired the obligation, it was left to the states to prescribe and shape the remedy to enforce it. The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made; these are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to per-

[National Union v. Sherry.]

form them by the one party and the right acquired by the other. There can be no other standard by which to ascertain the extent of either than that which the terms of the contract indicate, according to their settled legal meaning; when it becomes consummated, the law defines the duty and the right, compels one party to perform the thing contracted for, and gives the other a right to enforce the performance by the remedies then in force. If any subsequent law affect to diminish the duty or to impair the right, it necessarily bears on the obligation of the contract in favor of one party to the injury of the other; hence any law, which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution."

These sections of the Code being applicable to the contracts sued upon, it follows that the pleas as to which demurrers were sustained were insufficient, for the reason that no one of the pleas in question setting up the special defenses as to the fraudulent representations of the assured in procuring the policy was sufficient under those provisions of the Code.

The rules as to the sufficiency of such pleas are well stated in the following cases:

"Misrepresentations as to physical conditions by an applicant for life insurance do not operate to avoid the contract of insurance thereupon made, unless they are such as to deceive the insurer about matters material to the risk, thus amounting to fraud, or unless they be warranted as true, and consequently involved a breach on the part of the insured of the contract of insurance."
—*Providence, etc., Society v. Pruett,* 141 Ala. 688, 37 South. 700.

In the case of *Alabama Gold Life Insurance Company v. Johnston*, 80 Ala. 474, 2 South. 130, 59 Am. Rep. 816, this court said: "There [*Southern v. Booker*, 9 Heisk. (Tenn.) 606, 24 Am. Rep. 344] the policy, as here, was conditioned to be avoided by 'any untrue or fraudulent answer' to the questions in the application. The answers were not strictly true as to the birthplace, residence, and occupation of the insured. It was held that, none of these being material to the risk, they would be construed as representations, although expressly declared to be 'the basis of the contract' of insurance. The court said: 'It would seem to be gross injustice to allow this [meaning the avoidance of the policy and the forfeiture of all payments made under it] in a case where the insured has acted in the utmost good faith, and honestly disclosed every fact material to be known, because, merely by inadvertence or oversight, an error of fact has been inserted in his application—an error that is clearly immaterial and that could not by possibility have affected the contract. It is true that the parties have a right,' the court adds, 'to make their own contract, and by its terms we must be governed; but before a court could hold a policy void, and all premiums paid thereon forfeited, because statements of this character in the application turned out to be untrue, they should be fully satisfied that such terms were fully and distinctly agreed to by the parties.' These views, in our judgment, announce the sounder and more just doctrine, and they meet with our approval, being supported by reason, as well as by the more recent decisions of this country, on the subject of life insurance."

If the representations in question were material to the risk, and were relied upon, and the insurance company or society was deceived thereby, or they induced

the writing of the policy, such facts are not alleged in any of the pleas to which demurrers were sustained.

The questions involved on this appeal as to the sufficiency of these pleas were considered and treated fully by this court in the case of *Insurance Co. v. Gee,* 171 Ala. 435, 55 South. 166. It was there said:

"Where fraudulent representations are pleaded in defense to an action on a policy of insurance, it must be shown that false statements have been made with intent to deceive; that they related to matters intrinsically material to the risk; and that the insured relied on them. This rule has not been changed by statute or decision.

"Where, on the other hand, a breach of warranty (that is, a breach of a stipulation of the completed contract) was pleaded under the law as it was prior to the enactment of section 4572 of the Code, that was material which was made so by agreement of the parties, whether intrinsically so or not. Whatever the assured warranted to be true he, by necessary implication, agreed to be material, and its falsity barred him of any recovery on the contract.—*Alabama Gold Life Ins. Co. v. Johnston,* 80 Ala. 467, 2 South. 125, 59 Am. Rep. 816."

"The purpose of statutes of this kind is to prevent the unfair practice adopted by some companies of multiplying statements to be made by the insured, to which, by the wording of the policy, the technical character of warranties is given, and to relieve against the hardships arising from strict enforcement of the common law as to warranties.—*White v. Provident Savings Society,* 163 Mass. 108, 39 N. E. 771, 27 L. R. A. 398; 3 Cooley's Briefs, 1984."

"As to mere representations, the statute may well be held to be only declaratory, but as to warranties it is

made a new rule. In the opinion of a majority of the court, it speaks in terms, neither of warranties nor of representations, technically so called, but deals with all misrepresentations made in negotiating the contract or policy. Misstatements of fact, whether the statement is said to be by the parties a warranty or representation, are equally misrepresentations, and are placed in each case upon the same footing by the statute which applies to them, if the statements are called warranties by the parties, no less than if they are mere representations."

"Perhaps our own statute does not say what it means as clearly as it might. But by its introduction of the word 'warranties' it makes even clearer than do the statutes of those other states, to which we have referred that it was intended to break down in a measure the technical distinction between warranties and representations, for it puts warranties and misrepresentations in a class together by providing that no misrepresentation or warranty shall defeat or avoid the policy, unless 'such misrepresentation' is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss."

Replications 4 and 5 were not subject to the grounds of demurrer interposed; they alleged that the premiums were paid by the insured and accepted by the company or society with notice and knowledge of the falsity of the statements relied upon in the special pleas as a defense. If this was true, and the evidence we think shows it without dispute, this was a waiver of the defense set up in said pleas. There is no such difference between the policy or contract here sued on and the ordinary life policy as to prevent this rule from applying to such benefit certificates. There is nothing in the question of variance raised on the appeal. There was

no material variance between the instrument sued on and the one offered in evidence. In fact, we find no variance at all.

The contract of insurance sued on being proven as alleged, without dispute, and the replications to the special pleas being also proven without dispute, the plaintiff was clearly enitled to a verdict, and any other errors complained of were harmless for this reason.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.