•    (80 South. 834)

PACIFIC MUT. LIFE INS. CO. v. HAYES.
(8 Div. 83.)

(Supreme Court of Alabama. Jan. 16, 1919. Rehearing Denied Feb. 6, 1919.)

1. INSURANCE ⚫═══392(1) — AGENTS — ACCEPTANCE OF DEFAULTING PREMIUM.

Where agent, having authority to accept defaulting premium, accepts premium with knowledge that payment was being made after default, such knowledge was imputable to the company, and forfeiture was waived.

2. PRINCIPAL AND AGENT ⚫═══124(1) — AUTHORITY—JURY QUESTION.

Where agent's authority is partly in writing and partly in parol, the extent of such authority is a question for the jury.

3. PRINCIPAL AND AGENT ⚫═══122(1) — AUTHORITY OF AGENT—DETERMINATION.

Where agent's authority is partly in writing and partly in parol, the jury in determining the extent of such authority may consider the acts and declarations of the agent.

4. INSURANCE ⚫═══665(8) — AUTHORITY OF AGENT—NOTICE TO INSURED—SUFFICIENCY OF EVIDENCE.

Evidence held insufficient to show that beneficiary or insured was informed of the real authority of agents, to whom defaulting premium was paid.

5. INSURANCE ⚫═══392(1)—LIFE INSURANCE—AGENT'S APPARENT AUTHORITY—DEFAULTING PREMIUM.

Acceptance of defaulting premium on life policy by agents having apparent authority to

accept premium after default, upon payment thereof by persons having no information as to agent's real authority, was binding upon insurer.

6. INSURANCE ⬅665(8)—LIFE INSURANCE—AUTHORITY OF AGENT—ACCEPTANCE OF DEFAULTING PREMIUM.

Evidence *held* to warrant jury finding that agents were authorized to accept defaulting premium.

7. INSURANCE ⬅392(1) — PAYMENT OF DEFAULTING PREMIUM.

Where check in payment of defaulting premium was cashed by general agent with knowledge of default, and sent on for collection by paying bank and paid by drawee bank, the truth or falsity of statements in good health certificate subsequently received from insured was immaterial, though the drawee bank did not pay the check until after receipt of the certificate; since such payment, in view of Code 1907, § 5136, related back to the day when the check was cashed and changed the conditional acceptance into an absolute payment as of that date.

8. INSURANCE ⬅668(15) — WAIVER — JURY QUESTION.

Whether there was a waiver of default by acceptance of defaulting premium was a question for the jury.

9. INSURANCE ⬅371 — WAIVER OF FORFEITURE—EFFECT.

Waiver by insurer of forfeiture by acceptance of defaulting premium did not create a new contract dating from the waiver, but merely gave the original contract binding force as if no cause of forfeiture had occurred.

Appeal from Circuit Court, Morgan County; Robert C. Brickell, Judge.

Action by Mrs. E. M. Hayes against the Pacific Mutual Life Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

E. W. Godbey, of Decatur, for appellant. W. T. Lowe and Callahan & Harris, all of Decatur, for appellee.

This cause was submitted and considered under rule 46 (65 South. vii [1]); the opinion of the court being delivered by Mr. Justice THOMAS.

This is the second appeal. The suit was on a policy of life insurance issued March 9, 1911. Upon the last trial the matter embodied in the charge on which the former reversal (76 South. 12 [2]), rested was given, together with other charges of like effect. The verdict was for plaintiff. The pleading and evidence were substantially the same on the two trials.

On this appeal the important question presented is whether there was error in declining defendant's request for the affirmative charge.

Of the question of good faith on Mrs. Hayes' part in making payment of the premium after default, appellee's counsel aptly observes the payment was made on October 17, 1913, while the assured was away from home at work, "where he had been for two weeks and four days" before he returned to her home, and at a time when, if he was sick, it was not known or supposed by any one concerned. The payment was to Penney & Whitman, as defendant's agents, who, when the same was accepted by them, knew the premium was in default and remitted the same by Lamar Penney's check to Fitts & Son. The check was not returned to Penney or to his firm or any member thereof; it recited that it was "for A. J. Maynor's life prem.," and the accompanying letter was to like effect.

[1] If the authority of Penney & Whitman, or either of them, was that they were entitled to receive payment from Mrs. Hayes of the defaulting premium, the knowledge of such agents of insured's default as to the accrued premium was that of defendant, and, if so, such agent's acceptance of the premium was a waiver of the forfeiture. Mr. Chief Justice Anderson observed in United States Health & Accident Ins. Co. v. Goin, 197 Ala. 584, 588, 73 South. 117, 118:

"The proof showed that Williams was the defendant's district manager, and that he received the premiums, wrote applications, and adjusted and settled losses. 'The business of an insurance company is, of necessity, carried on by its officers and agents. The company and its agents and officers are, in law, one and the same as to all transactions within the scope of the authority of the officers and agents, and their acts are imputable to the company. As a general proposition, it may be said that knowledge of an agent of an insurance company, as to matters within the general scope of his authority, is the knowledge of the company, and it is bound thereby.' Cooley's Briefs on Insurance, vol. 3, p. 2520."

There was evidence in the instant case from which the jury might infer that Penney & Whitman, as district agents for defendant, not only received payments of premiums maturing on policies in their district, but that the first and second, as well as the third premiums on instant policy, were so paid through them; that they took applications for insurance, and effectuated renewals of defaulting policies for the company within the district where Mrs. Hayes lived and paid the premium in question. The cases were collected, to support the statement that the disputed question of authority of an agent to receive the notice of, or to waive, a breach of the contract provisions of a policy of fire insurance is for the jury, in Southern States F. I. Co. v. Kronenberg, 74 South. 63, 66.[3] In that case it is further observed,

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] 178 Ala. xix.  [2] 200 Ala. 246.  [3] 199 Ala. 164.

of the powers of a general agent, that such power was prima facie coextensive with the business intrusted to his care, and that such agent was authorized to act for the principal in all matters coming within the usual and ordinary scope and character of the conduct of such business; that the apparent authority of such agent cannot be narrowed by secret instructions and limitations from the principal unless the third party dealing with such agent has notice thereof.

This record shows that E. D. Whitman, of the firm of Penney & Whitman, was, in compliance with the statute, commissioned by the secretary of state of Alabama agent of the Pacific Mutual Life Insurance Company, authorized to transact the business of life, health, and accident insurance for said company, on January 6, 1911, for the remainder of the year; that like commissions duly issued by that state official to Lamar Penney of said firm to do, or authority to conduct for defendant, the business of insurance for the years 1911, 1912, and 1913, the respective latter dates of issuance of such commission being January 19, 1912, and February 10, 1913. One phase of the evidence further tended to show the defendant paid to the secretary of state, or insurance commissioner, the usual fees for such agent's commission that issued to Penney and Whitman of said firm (of Penney & Whitman) to transact its business of insurance in the state of Alabama. Defendant, however, insists that said agency was only for and at the instance of W. F. Fitts & Son as general agents of defendant. In Sun Ins. Office of London v. Mitchell, 186 Ala. 420, 426, 65 South. 143, Mr. Justice Somerville declared of the certificate of the secretary of state issued to one Myers, as the agent of defendant, that it prima facie established the general agency of Myers for the defendant company and authorized such agent to transact the insurance business indicated in the certificate in the state of Alabama; that an agent who is authorized to solicit and receive applications for fire insurance intrusted to him by the company for that purpose must be regarded quoad hoc as the general agent of the company, and third persons without notice of the limitation of the authority of said agent, as to such persons, said general agent's authority must be determined by the nature of the business and is prima facie coextensive with its requirements.

The contract of agency of Penney & Whitman with Fitts & Son recited that it was "for the purpose of procuring and transmitting applications from individuals for insurance in the Pacific Mutual Life Insurance Company of California, delivering life and endowment policies, collecting and paying over to the general agent premiums on the insurance so effected, and performing such other duties as may be required by the general agent, all in accordance with the rules of the company and the methods of conducting business which are now in force or which may hereafter be given or adopted by the company or general agent"; the agent would devote his entire time, talents, and energies to the business. In addition to the schedule of commissions allowed to agents, it was further agreed:

"That in the event the said Lamar Penney and E. D. Whitman shall produce and pay for not less than fifty thousand dollars in life insurance exclusive of term insurance during any calendar year under this contract, and shall be actively engaged under this contract according to its terms and provisions they shall receive a renewal commission of ten per cent. (10%) of the second annual premiums paid on all whole life, twenty payment life and twenty year endowment policies produced during said calendar year."

[2, 3] Without more, under defendant's approved agency contract, the agent's authority was prescribed in part in writing and rested partly in parol; that is, as to the performance of such duties as may be required of them "all in accordance with the rules of the company and the methods of conducting business which are now in force, or which may hereafter be given or adopted either by the company or general agent." Thus the instant case is brought within the principle, where the authority of the agent is in dispute and rests in parol, or is to be inferred from the conduct of the principal, the jury must determine that authority and to that end may consider the acts and declarations of the agent. Roberts & Son v. Williams, 73 South. 502;[4] Southern States Fire Ins. Co. v. Kronenberg, supra; United States Life Insurance Co. v. Lesser, 126 Ala. 568, 587, 28 South. 646.

The agency contract of Fitts & Son with defendant company contained sections 19 and 20, as follows:

"This contract is strictly confidential, and in case the agent shall mention or exhibit the terms thereof to any person or persons, he shall forfeit all benefits hereunder.

"All contracts with subagents shall be executed in triplicate, immediately forwarded to the company, and shall be subject to its approval."

From this, it is clear that, under the agency contract of Fitts & Son with defendant, the former were authorized to appoint as agents Penney or Whitman, and it was further required that such agency contract be executed in triplicate and immediately forwarded to the company, and was dependent on that company's approval. The appointment of Penney & Whitman as subagents, afterwards enlarged to district agents, was ratified and approved by the company. Mr. Whitman testified that his firm had circulars from the company in regard to han-

dling campaigns for insurance; that he or his firm would notify the company what parties borrowing money on policies had to say as to payments, etc., acknowledged receipt of the company's letters to him or his firm, signing their names as agents, and sent communications direct to the defendant company in reference to the insurance business done or existing in the district of which Penney & Whitman were agents; as district agents handled the business of the company in said district, appointed subagents, had reports from the same, and transmitted such reports to Fitts & Son; that this firm shared in premiums paid on insurance for the first, second, and third years, provided his firm had obtained the required amount of business to authorize an interest (under the agency contract) in such premiums; that for one or two years they were so interested in the second and third year premiums because of the production of the required amount of business giving such interest. Witness further testified that neither his firm nor any member thereof sent checks direct to defendant company, but all remittances made by them were to Fitts & Son.

The evidence of a general agency in Penney & Whitman tended to show that receipts for premiums were sent that firm in blank, to be countersigned by the firm or its members when interested in such premiums; that is to say, premiums for first, second, and third years (as the case may be) in which Penney & Whitman had an interest under the agency contract; the countersigning of such official receipt by Penney & Whitman for the first year's premium, or for premiums in which they had a contract interest; the use of stationery, in their correspondence with Fitts & Son, with the defendant, and with third persons, on which Penney & Whitman were designated as defendant's agents; the acknowledging receipt of the company's letters, signing their names as agents; the canvassing, for the company's benefit, the several counties composing the district for which they were agents; the giving attention for the company to reinstatement of lapsed policies, and the receipt from Mrs. Hayes of the premiums theretofore accruing on the instant policy, and the company's addressing "Penney & Whitman as agents" in correspondence sent "direct from the company in reference to business we (Penney & Whitman) did in our district."

Of the payment of premiums on the policy in question by Mrs. Hayes and of the agent's contract, a member of Penney & Whitman's firm (Mr. Penney) testified:

"She always sent them up to the office, and some of us had always accepted them; and, if we had no official receipt, they would send it to us, and we would deliver it. * * * The first year's receipts I am sure we signed or, maybe, part of them. I don't think we went into any detailed explanation to Mrs. Hayes about that. I told her we had to send it in to Fitts & Son and get the receipt. The first year's receipts were sent to us, with those dates, and the premiums filled in as they became due; sometimes 30 days before the premium was due. That contract between Penney & Whitman and Fitts & Son was not read to Mrs. Hayes or Arthur Maynor either; it was our private affair. Nor did we divulge our private contract with Fitts & Son to them or anybody else. Fitts & Son never returned my check (the check of Penney for premiums paid by Mrs. Hayes), and never returned the money that I remitted for this premium."

In United States Life Ins. Co. v. Lesser, supra, the claim was made, as here, that the agent collecting the premium was a subagent of a general agent, and, not being the agent of the company, had no authority to take payment and continue the conditions of the policy in force. The summary of the conclusions there announced (the writer of the opinion was Chief Justice Brickell) was:

"First, that the condition of the policy restraining the power of agents 'to alter or waive any contract or condition on behalf of the company' was a condition reserved for the benefit of the company, of which it could take advantage or could waive it and delegate to agents the implied powers vested in the president in conjunction with the secretary or actuary. Second, that there was evidence having a reasonable tendency to show that Fraleigh was an agent of the company, and the scope of his authority. Third, the fact of his agency and the extent of his authority resting in parol became matter for the determination of the jury. Fourth, that the extent of his authority need not be shown by direct or positive evidence—that it may be shown or inferred from the course of dealing pursued by him and the company. Fifth, that having been intrusted with the collection of the renewal receipt for the premium, he could waive payment of the premium on the day appointed, deferring it until the return of the rewritten policies from the home office in New York, or until there was refusal to rewrite, of which the assured had notice." 126 Ala. p. 587, 28 South. 652.

[4-6] The evidence fails to show that plaintiff or the assured was informed of the real authority of Penney & Whitman and of Fitts & Son. As to such uninformed persons, defendant is bound by the reasonably apparent authority which such agents were permitted to exercise in the conduct of defendant's business at New Decatur at the time of the receipt of the defaulting premium on the policy in question. United States Ins. Co. v. Lesser, supra; Sun Ins. Co. v. Mitchell, supra; Security Mut. Life Ins. Co. v. Riley, 157 Ala. 553, 47 South. 735; Syndicate Ins. Co. v. Catchings, 104 Ala. 176, 187, 188, 16 South. 46; Roberts & Son v. Williams, supra. From the evidence, or reasonable inferences deducible therefrom, the jury was warranted in reaching the conclusion of authority, or of color of authority,

in Penney & Whitman, authorizing them to receive the quarterly payment made on October 17, 1913, by Mrs. Hayes.

The refusal of the affirmative charge for defendant may be justified on the further ground of waiver by Fitts & Son of the default in payment of premium. The testimony is open to the reasonable inference that the health certificate in question was received at the office of Penney & Whitman, from Fitts & Son, on October 24, 1913—evidenced by the fixation thereon of the rubber stamp at their office according to the custom of such business and in the conduct thereof. Mr. Whitman's best recollection was that the certificate of good health was executed by the assured on October 24th and mailed to Fitts & Son on that date. It is without question that when the premium was paid in money by Mrs. Hayes to Penney & Whitman on October 17, 1913, on October 21st that firm mailed Penney's check therefor, stating it was for the quarterly premium due on A. J. Maynor's life policy No. 244466, the policy sued on. Their accompanying letter, signed "Penney & Whitman, Agts.," was to the like effect. The same was acknowledged to have been received by Fitts & Son on October 22d, and the check was indorsed by the payees to the City National Bank of Tuscaloosa on October 23d, indorsed by the Birmingham Trust & Savings Company on October 24th, and was paid by the Morgan County National Bank of New Decatur on October 25, 1913. When the check was honored by its payment by the bank at New Decatur on which the same was drawn, such payment related back to the days it was cashed by Fitts & Son in Tuscaloosa, and between the parties here at interest had the effect to change the conditional acceptance of October 23d into an absolute payment. Code, § 5136; Marsh v. Mutual Life Ins. Co., 76 South. 370;[5] Eufaula Grocery Co. v. Missouri National Bank, 118 Ala. 408, 418, 24 South. 389; So. Hardware Co. v. Lester, 166 Ala. 86, 91, 52 South. 328; Ala. Grocery Co. v. First National Bank of Ensley, 158 Ala. 143, 48 South. 340; Buck v. Gimon, 79 South. 51, 52;[6] Holloway v. Harper, 108 Ala. 647, 18 South. 663; 5 Mayf. Dig. 87, § 2; Hooker v. Burr, 137 Cal. 663, 70 Pac. 778, 99 Am. St. Rep. 17, 21; Hunter v. Wetsell, 84 N. Y. 549, 554, 38 Am. Rep. 544; Benjamin's Chalmers Dig., Bills, Notes and Checks, pp. 261, 262, arts. 254–257.

[7] Such would have been the legal effect of payment by the New Decatur bank of the check had the same been that of Mrs. Hayes rather than of Mr. Penney. Since the payment of the quarterly premium was made by Mrs. Hayes in money to Penney & Whitman, who sent Penney's personal check therefor to Fitts & Son, the legal effect of the transaction was not changed. The retention of the check by Fitts & Son, after be-

ing fully advised of the facts of default on assured's part in the making of the quarterly payment, was a ratification (on October 23d) of the act of Penney & Whitman in accepting the premium paid to them in money on October 17th by Mrs. Hayes for the assured. Not only did Fitts & Son retain Penney's check and·send it forward for collection accepting payment thereof, but in neither of their letters to Mrs. Hayes or to Penney did they refuse acceptance thereof as payment—they merely stated the rules of the company as to sending out official receipts under the existing conditions. These letters were set out on former appeal. Pacific Mutual v. Hayes, supra (200 Ala. 246, 76 South. p. 15).

[8, 9] The question of waiver vel non of default in making the quarterly payment being for the jury, if they found that such waiver by Fitts & Son was made on October 23d in sending forward for collection the check as a payment of the premium after default, with full knowledge of the default, the company was not deceived by assured's statements contained in the good health certificate, and the risk of loss was not increased thereby. The waiver of the forfeiture of nonpayment of quarterly installments of premium on the date it accrued, if such default was waived, did not create a new contract of insurance dating from the waiver on October 23d, but the legal effect of such waiver was only treating the original contract of binding force as if no cause of forfeiture had occurred or existed. Mutual Life Ins. Co. v. Lovejoy, 78 South. 299, L. R. A. 1918D, 860;[7] Alabama State Mutual Assurance Co. v. Long Clothing & Shoe Co., 123 Ala. 667, 26 South. 655.

The first exception taken to a part of the oral charge, when construed with the preceding statements of the court, was but an illustration of the principle that a principal cannot bind uninformed third persons by secret instructions to an agent or limitations upon the authority thereof. Syndicate Ins. Co. v. Catchings, supra. When the excepted portion of the charge is construed in the light of the evidence and the whole charge of the court, there was no error. It is without dispute that neither Mrs. Hayes nor assured had disclosed to them the real authority of Fitts & Son or of Penney & Whitman with whom they had uniformly dealt in procuring the insurance and in making payment of the premium on the policy.

The second exception to the oral charge is equally without merit, for the court was only declaring the law announced in Mass. Mutual Life Ins. Co. v. Crenshaw, 195 Ala. 263, 70 South. 768. So also no reversible error was committed in instructing the jury as to the effect of the certificate of good health in reference to consulting a physician. When that part of the charge to

which exception was reserved is considered with the whole of the oral charge on the subject and with defendant's given charge No. 24, it is apparent that a full and fair instruction was given the jury as to the legal effect of the health certificate.

Several written charges were made the basis of assignments of error by the appellant, each of which have been examined, and are found to have been covered by given charges, or misleading, or contrary to the evidence, or erroneous, or not insisted upon in argument. This is a four-record case, and, after examination of the several assignments of error by the justices, no further detailed discussion is deemed necessary.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.