(81 South. 690)

HARDY v. SOVEREIGN CAMP, WOODMEN OF THE WORLD. (2 Div. 195.)

(Court of Appeals of Alabama. April 15, 1919.)

1. INSURANCE ⬳723(2)—LIFE INSURANCE—FRAUD OF INSURED.

Fraud vitiates any transaction into which it enters, and fraud on the part of insured will render the insurance contract void, without any express provision to that effect in the policy.

2. INSURANCE ⬳723(5) — LIFE INSURANCE — STATEMENTS AS TO HEALTH—WARRANTIES.

Statements relating to the health and physical condition of an applicant for life insurance are material to the risk, and, if false, are fatal to the policy, being regarded as warranties, and, even where regarded as representations, may be made material by the terms of the contract, so as to avoid the policy if false.

3. INSURANCE ⬳761—FRATERNAL BENEFIT INSURANCE — FRAUD PREVENTING REINSTATEMENT.

If insured, knowing he was not in good health, and without revealing his condition to his fraternal order, simply paid arrearages due to the order, concealing his information as to his health, it was such a fraud on the order as would prevent his reinstatement, unless the order had knowledge of his condition when it received or retained the money.

4. INSURANCE ⬳755(3)—LIFE INSURANCE—WAIVER OF FORFEITURE OR ITS AVOIDANCE.

No waiver of a forfeiture or its avoidance arises from acceptance or retention of a premium, unless the insurer at the time had knowledge of the facts authorizing the forfeiture or avoidance, and the mere opportunity to make an examination will not charge the insurer with knowledge of what examination would have disclosed.

5. INSURANCE ⬳763 — FRATERNAL BENEFIT INSURANCE — FRAUDULENT REINSTATEMENT—TENDER OF PREMIUMS.

Where insured defrauded his fraternal order in paying dues in arrears without revealing his impaired health, which he knew, it is immaterial to the order's liability after insured's death that it had not tendered back the amount paid by insured as dues subsequent to reinstatement, though it owes the money to insured's legal representative, having retained it without full knowledge of the fraud.

Appeal from Circuit Court, Greene County; Henry B. Foster, Judge.

Action by Eula E. Hardy against the Sovereign Camp, Woodmen of the World. Judgment for defendant, and plaintiff appeals. Affirmed.

Edward De Graffenreid, of Tuscaloosa, for appellant.

C. H. Roquemore, of Montgomery, for appellee.

SAMFORD, J. The case was tried by the court without the intervention of a jury and the rendition of the judgment is the only assignment of error.

The plaintiff's intestate became a member of the defendant order and obtained a certificate insuring his life, which certificate was issued on the 27th day of July, 1915. The defendant, being a mutual organization for the benefit of its members, the certificate was accepted subject to the constitution and by-laws of the order of which the plaintiff's intestate was a member. The certificate provided that plaintiff's intestate, a member, etc., was, while in good standing as a member of the fraternity, entitled to participate in its beneficiary fund, etc. The certificate further provided,

"This certificate, together with articles of incorporation, constitution, and laws of the Sovereign Camp, and the application for membership and medical examination, and all amendments to each thereof, shall constitute the agreement between the society and the member."

Section 115, subdivision A, of defendant's by-laws provides:

"Should a suspended member pay all arrearages and dues to the clerk of his camp within ten days from the date of his suspension, and if in good health and not addicted to the excessive use of intoxicants or narcotics, he shall be restored to membership and his beneficiary certificate again becomes valid."

Subdivision C of the same section provides that any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time, and if any of the representations or statements made by said applicant are untrue, then said payments shall not cause his reinstatement nor operate as a waiver of the above conditions. Section 118 provides:

"No suspended member shall be reinstated whose health is at the time impaired," etc.

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Section 119 provides:

"A member suspended for nonpayment of assessments or dues is not entitled to any benefits of this society," etc.

Section 93, subdivision B, provides that, if a member fails to make payments of assessments on or before the 1st day of the month following, he shall stand suspended, and during such suspension his beneficiary certificate shall be void.

It was shown by the testimony that plaintiff's intestate was suspended for nonpayment of dues on December 1, 1915; that he was reinstated on the 1st day of the following March by simply paying the lapsed dues to the clerk of the local camp, who testified that he took the money and, without more, forwarded it to the defendant's home office; that on June 1, 1916, plaintiff's intestate, again being in arrears, stood suspended, and after eight days, without saying anything about his health, and without the defendant's knowing of any change in the condition of his health, paid to the clerk of the local camp of the defendant the arrearages, which were also forwarded to the head camp of the defendant and retained by it. There is nothing in the record to show any notice or anything to put the defendant upon inquiry as to any change in the physical condition of the plaintiff's intestate at the time of the payment of the arrearages on June 8, 1916.

It was shown by Dr. Hardy that he attended plaintiff's intestate as his physician in March, 1916, and that plaintiff's intestate was suffering from diabetes, and that he suffered from this disease from that time until he died in October, 1916, that he had diabetes, and was not in good health, on June 1, 1916, and that he had treated him for diabetes on May 4, 1916. It was shown in the examination of Woodson Jones, a witness for plaintiff, that in September, 1916, plaintiff's intestate knew or had reason to believe, he had diabetes; he having then made the declaration that the doctor had told him so and advised him with reference to his diet.

There are other facts appearing in the record, and perhaps some other questions which might have influenced the trial court in arriving at the judgment rendered in this case; but, if so, they raised questions purely technical, and the insistence of appellee's counsel here is for an affirmance of the judgment for lack of proof in matters which seem to have been taken as conceded on all sides during the presentation of the cause in the trial court, and hence, in dealing with the appeal, we prefer rather to address ourselves to the question which was really litigated.

[1] There seems to be no question but that there was a forfeiture of the plaintiff's rights under the certificate on June 1, 1916, and unless the payment by plaintiff's intestate to the clerk of the local camp on June 8, 1916, had the effect of reinstating him to his rights under the contract, the plaintiff cannot recover in this suit. It is elementary law that fraud vitiates any transaction into which it enters, and fraud on the part of the insured will render the insurance contract void, without any express provision to that effect in the policy. Welch v. Union Central Life Insurance Co., 108 Iowa, 224, 78 N. W. 853, 50 L. R. A. 774; Cooley's Briefs on Ins., vol. 1, p. 552 and authorities there cited.

[2-4] It is a general rule, well settled by almost universal authority, that statements relating to the health and physical condition of an applicant for life insurance are material to the risk, and, if false, are fatal to the policy; and in almost all the cases such statements are regarded as warranties, and, even where regarded as representations, statements as to the health may be made material by the terms of the contract, so as to avoid the policy, if false. For a collation of the authorities upon this proposition, see Cooley's Briefs on Insurance, vol. 3, pp. 2096, 2097. If, therefore the plaintiff's intestate with a knowledge of the fact that he was not in good health and without revealing that condition to the defendant, simply paid the arrearages due to the defendant, concealing from it the information peculiar to himself which he had, it would be such a fraud upon the defendant as would prevent his reinstatement, unless the defendant had knowledge of his condition at the time it received the money, or retained it after the discovery of the true facts and prior to the death of the plaintiff's intestate. It is well settled by the great weight of authority that no waiver of a forfeiture or avoidance arises from an acceptance or retention of a premium, unless the insurer, at the time of such action on its part, had knowledge of the facts authorizing the forfeiture or avoidance, and the mere opportunity on the part of the insurer to have made an examination or ascertain the facts will not charge it with knowledge of what an examination would have disclosed or what could have been ascertained. Pope v. Glens Falls Insurance Co., 136 Ala. 670, 34 South. 29. There is no pretense in this case that the officer of the defendant order having power to waive these matters was ever informed of the true condition of the state of health of plaintiff's intestate until after his death. On the contrary, it does appear that the defendant was entirely ignorant of the true condition, and at the first opportunity repudiated the transaction.

[5] That the defendant has not made a tender to somebody of the amount paid to it by plaintiff's intestate after June 1, 1916, is not material here. That the defendant owes this money to the legal representative of plaintiff's intestate is very evident, but its retention of it without a full knowledge of the fraud which had been practiced upon it could

not have the effect of fastening upon it the liability as set out in the certificate.

The trial court had this evidence before it, with sufficient facts to justify the foregoing conclusion, which it doubtless did, and in which judgment we find no error. The judgment is affirmed.

Affirmed.