### LIFE & CASUALTY INS. CO. v. EUBANKS.
### (6 Div. 82.)

(Court of Appeals of Alabama. Nov. 14, 1922.)

**I. Insurance ☞146(3) — Forfeiture not favored.**

Forfeitures for nonpayment of premiums are not favored.

**2. Insurance ☞372—Rights may be waived.**

With respect to a contract of insurance, as with other contracts, the parties thereto may, at their pleasure, alter, modify, or rescind the contract, so long as the same is supported by their mutual assent, and such alteration, modification, or rescission may extend to a waiver of any right either party might have had under the original contract.

**3. Contracts ☞262—Waiver may be implied.**

The right to insist upon a forfeiture of a liability under a contract being a right which may be waived by the party in whom the right resides, such waiver may be implied from conduct inconsistent with the intention to exercise

───────

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] 207 Ala. 269.

it, for neither party to a contract may receive the benefits accruing thereunder and avoid the liabilities created thereby.

**4. Insurance ⟨key⟩392(8) — Collection of premiums held waiver of forfeiture.**

If collecting agent was authorized to receive payments from the insured after the same were in default, then his knowledge of the insured's default was the knowledge of the insurance company, and, if so, then the acceptance of the premium was a waiver of the forfeiture; and, if the agent had knowledge that the insured had been injured and was confined in a hospital at the time of the acceptance of the premiums so in default, then this knowledge was imputable to the insurance company.

**5. Insurance ⟨key⟩375(2)—Collecting agent held authorized to accept past-due premiums.**

Collecting agent, if authorized to accept past-due premiums because of continuation of liability of insurer for death, under death and accident disability policy, had authority to receive past-due premiums for all purposes.

**6. Insurance ⟨key⟩392(7)—Policy lapse for non-payment held waived by acceptance of premiums.**

Where policy had previously lapsed for non-payment of premiums for four successive weeks, and thereafter premiums had been collected on it, held that the clause requiring revival of lapsed policy to be evidenced by indorsement on the face of the policy was waived, and acceptance of full premiums thereafter, following a lapse of payment, with knowledge that insured had suffered an accident, could not be construed merely as accepting premiums due for continuing death liability, where the premiums were severable; 20 per cent. thereof being for death benefit and 80 per cent. for the sick and accident benefit.

Appeal from Circuit Court, Jefferson County; Romaine Boyd, Judge.

Action on a policy of insurance by Calvin Eubanks against Life & Casualty Insurance Company. From a judgment for plaintiff, defendant appeals. Affirmed.

William A. Jacobs, of Birmingham, for appellant.

A provision in an insurance policy that the insured will not be entitled to sick or accident benefits, where disability arises when the insured is in arrears for two Mondays or more is binding on the insured. 1 C. J. 411; 129 Mo. App. 256, 108 S. W. 139. In the absence of a provision in the policy, the insurance company has no power to cancel the policy without the consent of the other party. 3 Cooley's Ins. 2830; 18 Ga. App. 494, 89 S. E. 633. A waiver is a voluntary relinquishment of a known right; without the existence of the right there can be no waiver. 3 Cooley's Ins. 2459.

Engel & Mudd, of Birmingham, for appellee.

The acceptance of premiums by the insurance company waives the right to forfeit the policy because the premiums were not paid when due. 126 Ala. 568, 28 South. 646; 180 Ala. 627, 61 South. 944; 14 R. C. L. 1192; 197 Ala. 584, 73 South. 117; 138 N. C. 379, 50 S. E. 762, 107 Am. St. Rep. 548; 16 Ala. App. 274, 77 South. 424.

BRICKEN, P. J. Calvin Eubanks, as plaintiff, brought his action against the Life & Casualty Insurance Company, as defendant, in the court below, to recover the sum of $32, alleged to be due under a certain insurance policy issued to plaintiff by defendant on the 10th day of November, 1919, which policy it was alleged insured plaintiff against sickness and accident in the sum of $8 per week. It appears that the plaintiff was injured by a mine accident on the 7th day of June, 1921, and that he was continuously disabled from that date to the 5th day of July, 1921, the date on which plaintiff brought his suit in the court below, and that such disability therefore continued for four, or more, consecutive weeks. The insurance company defended the suit and denied liability upon the ground that the insurance policy contained a clause which substantially provided that, if the insured was injured by accident at a time when the insured was in arrears in the payment of his weekly premiums for two consecutive weeks, then he would have no right to collect any accident indemnity from the insurance company, and that, at the time of the accident from which plaintiff suffered the disability, the plaintiff was in arrears for the premiums payable on May 30th and June 6th, respectively, preceding the accident. The plaintiff offered his evidence in support of his action in the court below, but the defendant offered no evidence, save that adduced from a cross-examination of plaintiff's witnesses, and contended that upon the evidence offered by plaintiff it was entitled to the general affirmative charge in its behalf. At the instance and request of plaintiff, the trial court gave the general affirmative charge for the plaintiff. There was a jury verdict for the plaintiff in the sum of $32, and the judgment of the trial court was accordingly pronounced against defendant for said sum, from which judgment this appeal is taken.

As before stated, the action in the court below was founded upon a contract of life and accident indemnity insurance and with reference to such contracts the law seems to be well settled in this state. An insurance company has the right to embody in the contract of insurance such restrictions and conditions as it may see fit to impose, so long as such restrictions and conditions are fair, just, and reasonable. The insured has the right to accept or to reject the contract of insurance as the insured may see fit.

[1] As a general rule, a contract of insurance is to, be strictly construed against the insurer, and is to be liberally construed in favor of the insured, and, with respect to forfeitures, the courts will adopt that construction most favorable to the insured, and it may be said that forfeitures for nonpayment of premiums are not favored. Manhattan Life Ins. Co. v. Parker, 204 Ala. 313, 85 South. 298; Mutual Life Ins. Co. of New York v. Lovejoy, 201 Ala. 337, 78 South. 299, L. R. A. 1918D, 860.

It is undoubtedly the law that the insurer and the insured have the right to adopt such contract of insurance as they may see fit so long as that contract complies with the laws of this state, and is of itself fair, just, and reasonable.

[2] It is also true that, with respect to a contract of insurance, as with other contracts, the parties thereto may, at their pleasure, alter, modify, or rescind the contract, so long as the same is supported by their mutual assent. Such alteration, modification, or rescission may extend to a waiver of any right either party might have had under the original contract. Mutual Life Ins. Co. of New York v. Lovejoy, supra; Cornish v. Suydam, 99 Ala. 620, 13 South. 118; Pioneer Co. v. Nonnemacher, 127 Ala. 547, 30 South. 79.

[3] The right to insist upon a forfeiture of a liability under a contract being a right which may be waived by the party in whom the right resides, such waiver may be implied from conduct inconsistent with the intention to exercise it, for neither party to a contract may receive the benefits accruing thereunder and avoid the liabilities created thereby. Romanoff Co. v. Cameron, 137 Ala. 217, 33 South. 864.

The evidence introduced upon the trial of this case in the court below was without any material conflict, and clearly shows that the plaintiff was injured by an accident, from which he was totally disabled for the time alleged in the complaint. Under the evidence, the plaintiff was clearly entitled to recover unless precluded from maintaining the action by the terms of the insurance policy issued to him by the insurance company. It, therefore, is necessary to consider and determine what effect should be given the forfeiture clauses of the policy, and whether or not there was a waiver of said provisions by the insurer.

The insurance policy in question was introduced in evidence upon the trial of this case in the court below and was so introduced by the plaintiff in support of his complaint. Under the general provisions of said policy, the insurance company, defendant, for and in consideration of a weekly premium of 40 cents to be paid by the insured, the plaintiff, "as of the Monday of which this policy bears date and on each succeeding Monday thereafter during the life of the insured," agreed, subject to the conditions of the policy, to pay to the plaintiff a weekly benefit of $8 in case of sickness or accident, and also the sum of $112 in case of death. It was expressly provided by the terms of said policy that 20 per cent. of the premium was for the death benefit, and that 80 per cent. of said premium was for the sick and accident benefit.

The policy contained numerous special provisions, all of which constituted a part of said policy. Under the fifth clause of said conditions, it was provided that the insured should not be entitled to sick or accident benefit if the insured should suffer the weekly premiums to be in arrears for two Mondays, or more, and that the subsequent payment of any such premiums so in arrears should not entitle the insured to benefits for sickness or disability contracted or accruing during the period of such arrears, and, apparently, it is under this clause of the policy that the insurance company attempts to defend this suit. The plaintiff contends that defendant, through its course of dealings with the plaintiff, has waived all rights and privileges arising in its favor under said clause of said policy.

[4] The evidence introduced upon the trial of the case in the court below, as set out in the bill of exceptions shows without dispute, conflict, or controversy that, on the 7th day of June, 1921, the date the insured was injured by accident, the weekly premiums which were due on said policy on Monday, May 30th, and on Monday, June 6th, preceding, had not been paid by, or for, the insured, but it also appears that, on Monday, the 13th day of June, 1921, the premiums in arrears for Monday, May 30th, and Monday, June 6th, were paid to an agent of the company, and that on said date the weekly premiums due on Monday, June 13th, and on Monday, June 20th, were also paid, and that all of said premiums were paid to the collecting agent of the insurance company and were accepted by him with full knowledge that the insured had been injured on the 7th day of June preceding, and that he was then disabled and confined in a hospital, and that the insured would make claim for the sick or accident benefit provided under the policy, and that said agent was, then and there, asked for a "sick claim" which he gave to Emma Eubanks, the wife of the insured. It further appears that it was the custom of the insurance company to send its agent to the house of the plaintiff to collect the insurance premiums; that he usually came around every two weeks; that if the insured was behind with his premiums said agent would always accept the same; that it was his custom to accept past-due premiums without any question; that this agent would *solicit insurance, take applications for insurance, and collect the premiums.* We, therefore, hold that if said collecting agent was author-

ized to receive payments from the insured after the same were in default, then the knowledge of such agent of the insured's default was the knowledge of the insurance company, and, if so, then the acceptance of the premium was a waiver of the forfeiture. Pacific Mutual Life Ins. Co. v. Hayes, 202 Ala. 450, 80 South. 834; U. S. Health & Accident Ins. Co. v. Goin, 197 Ala. 584, 588, 73 South. 117. And if said agent had knowledge that the insured had been injured and was confined in a hospital at the time of the acceptance of said premiums so in default, then this knowledge was imputable to the insurance company. Hardy v. Sov. Camp, W. O. W., 17 Ala. App. 53, 81 South. 690.

[5] The question of prime importance in this case at this point then is, Did the agent collecting the premiums accruing under this insurance policy have the authority to receive payment of premiums after the same were in default? It is admitted by appellant in brief that the insured was in arrears in payment of his premiums for more than four weeks on February 25, 1921. This effected a lapse of the policy under its very terms. The policy at that time was forfeited in every respect, but thereafter the collecting agent received payment of the past-due premiums, and on every subsequent default continued to receive payment of past-due premiums. Says appellant in brief:

"Suppose the insurance company had refused on June 13th to accept the premiums that were tendered, and had continued to refuse until after the insured had become more than four Mondays in arrears, and then insured had died, would anybody say that any court in the land would not require the insurance company to pay that death benefit? The insurance company was legally bound to accept the premiums that were tendered on June 13th, because there was no provision in the policy for cancellation, nor was there any provision for lapsing the policy until after the insured had become in arrears for as much as four Mondays."

If the insurance company was legally bound to accept the premiums on June 13th, it was because the collecting agent had authority to receive payment of past-due premiums, and if he had the authority to accept past-due premiums, then he had the authority to waive the forfeiture.

[6] Appellant admits that the policy was in force on June 13th so far as the death benefit was concerned. We, therefore, hold that it was in effect for every purpose on that date, because the policy had lapsed on February 25th, and its revival was due to the acceptance of past-due premiums by the collecting agent and such acceptance of such past-due premiums was a waiver of the forfeiture.

The insurance policy, under the eleventh clause of "conditions," provided that the failure of a collector to call for the premiums due on the policy would not excuse nonpay-

ment of premiums when due, and that the insured would be required to pay the same at a branch office of the company, or at its home office. As to this clause of the policy, the evidence is without conflict that the insured was not, in fact, required to pay the premiums at any branch office, or at the home office, of the company, but that all of said premiums were paid to its agent, whose habit and custom it was to call at the home of the insured once about every two weeks for said premiums, and who received and receipted for the same without question or hesitation.

It was provided, under the tenth clause of "conditions," that the agents of the company were not authorized and did not have the power to make, alter or discharge contracts, *"or waive forfeitures, or to receive premiums on policies in arrears more than four weeks,"* and, under said clause, it was further provided that policies having lapsed could be revived by the company at its option *"upon the written application of the insured,"* and the revival of a lapsed policy was to be evidenced by *"an indorsement upon the face of the policy,"* and that there should be *"no liability whatever under this contract for any disability resulting from an accident occurring prior to the date of the revival indorsement on said policy."* (Italics ours.)

The insurance policy is set out in the bill of exceptions before us, and it contains no indorsement of revival whatever, and yet the evidence shows without dispute that the premiums due on January 24th, January 31st, February 7th, February 14th, and February 21st, 1921, respectively, were all in arrears on February 25, 1921, when the three premiums due January 24th, January 31st, and February 7th, were paid; the premiums which were due on February 14th and February 21st, respectively, being paid on the 4th day of March, 1921, following. Under the fifth clause of "conditions" of said policy, it was expressly provided that, "policies more than four (4) Mondays in arrears are lapsed." Therefore, according to the plain provisions of the policy, this contract was forfeited by the failure of the insured to pay his weekly premiums according to the terms of the policy, because, when he paid on February 25, 1921, he was then in arrears for five successive weeks.

Not only did the insurance company receive these five weekly premiums, but it thereafter continued to receive premiums under this policy for each successive week up to and including the 20th day of June, 1921, and this without any written application of the insured, or any indorsement of revival by the company on the face of the contract. If the insurance policy is to be construed in the light of its provisions that "policies more than four (4) Mondays in arrears are lapsed," and if this forfeiture clause was effective (and certainly it was just as effective as any other forfeiture

clause of the policy), then the insurance company would have been authorized and justified in refusing to accept payment of any further premiums under the policy for any purpose. But this it did not do. On the contrary, it received all past-due premiums and continued in this course and line of conduct with the insured even after the infliction of the injury 'which resulted in the disability suffered by plaintiff, and after notice to the agent that the disability had been suffered, and that the disability claim would be maintained. The insurance company had the right to stand on the forfeiture clause of the policy, or it had the right to waive said forfeiture clause. It saw fit, by its course and conduct, by receiving and retaining past-due premiums, to waive whatever rights it had under its forfeiture clauses, and, by its conduct, we think it is bound. We are not impressed with the idea, nor are we convinced by the argument, that, in the acceptance and retention of past-due premiums, the company bound itself simply to pay the death liability under the policy. The premiums paid were, under the express provisions of the policy, made severable. Twenty per cent. of said premiums were for the death benefit and 80 per cent. thereof were for the sick and accident benefit. If the company simply intended to continue the policy as a death benefit policy, 'some kind of notice of this fact should have been brought to the insured, and 8 cents per week, or 20 per cent. of the full premium, should only have been collected from the insured, instead of 40 cents, or the full premium, as was collected.

We are of the opinion, for the reasons above set out, that the affirmative charge requested by plaintiff should have been given; as was given by the trial court, and that the affirmative charge requested by the defendant was properly refused. Pacific Mutual Life Ins. Co. v. Hayes, 202 Ala. 450, 80 South. 834; Mutual Life Insurance Co. v. Lovejoy, 201 Ala. 337, 78 South. 299, L. R. A. 1918D, 860; Southern Indemnity Asso. v. Hoffman, 16 Ala. App. 274, 77 South. 424; U. S. Health & Accident Ins. Co. v. Goin, 197 Ala. 584, 73 South. 117; National Union v. Sherry, 180 Ala. 627, 61 South. 944; Security Mutual Life Ins. Co. v. Riley, 157 Ala. 553, 47 South. 735.

We find no error in the record, and the judgment appealed from is affirmed.

Affirmed.